ALBERT DATZ, PETITIONER-RESPONDENT, v. UNION HILL
HUDSON CORPORATION AND OCEAN ACCIDENT AND
GUARANTEE CORPORATION, LIMITED, RESPOND-
ENTS; OCEAN ACCIDENT AND GUARANTEE CORPO-
RATION, LIMITED, PROSECUTOR.

Submitted May 11, 1934—Decided November 2, 1934.

Before Justices TRENCHARD, HEHER and PERSKIE.

For the petitioner-respondent, *Andrew O. Wittreich.*

For the prosecutor, *Wall, Haight, Carey & Hartpence.*

PER CURIAM.

Albert Datz (hereinafter called the "workman") had an
award against the Union Hill Hudson Corporation (here-
inafter called the "assured") in the workmen's compensation
bureau, based on the findings of the deputy commissioner.
The deputy commissioner found that on December 15th, 1932,
the workman sustained injuries arising out of, and in the
course of his employment with the assured. The judgment
entered upon the award was subsequently docketed in the
Common Pleas Court of Hudson county. On August 3d,
1933, that court issued an order to show cause, based on the
prayer of a petition annexed to its application, why the Ocean
Accident and Guarantee Corporation (hereinafter called the
"carrier") should not pay to the workman the moneys due
and owing under the award and judgment docketed; and
after hearing the court so ordered.

It is stated in the brief of the prosecutor (carrier) that

*"the only question in this case is whether or not the voluntary surrender of the policy for cancellation by the assured, Union Hill Hudson Corporation, through its broker, was, in fact, a cancellation of liability and termination of coverage as of November 28th, 1932."*

We think that the carrier's contention that there was such a voluntary surrender and that it had the effect of a cancellation of liability, is without merit.

There was no competent and satisfactory evidence of a "voluntary surrender of the policy for cancellation by the assured." True, there was proof of a notice of cancellation *given by the carrier* in December, the effective date of which will be hereinafter stated.

The policy's language in the instant case provided how it could be canceled and how only it could be canceled. It seems plain that until cancellation was effected under the terms of its provisions, the policy remained in full force and operation. By its terms the policy covered from September 1st, 1932, to September 1st, 1933.

Section B of the policy provides:

"This policy may be canceled at any time by either of the parties upon written notice to the other party stating when, not less than ten days thereafter, cancellation shall be effective. The effective date of such cancellation shall then be the end of the policy period. The law of any state, in which this policy applies, which requires that notice of cancellation shall be given to any board, commission or other state agency is hereby made a part of this policy and cancellation in such state shall not be effective except in compliance with such law."

The law of the State of New Jersey provides:

"No contract of insurance issued by a stock company or mutual association against liability arising under the said Workmen's Compensation act shall be canceled within the time limited in such contract after its expiration, until at least ten days after notice of cancellation of such contract on a date specified in such notice shall be filed in the office of the commissioner of banking and insurance, and also served on the employers. Such notice shall be served on the

employer by delivering it to him or sending it by registered letter, addressed to the employer at his or its last known place of business; *provided,* that if the employer be a partnership, then such notice may be so given to any of the partners, and if the employer be a corporation, then the notice may be given to the agent or any officer of the corporation upon whom legal process may be served." *Pamph. L.* 1917, *ch.* 178, *p.* 525.

It is plain that the liability imposed upon the "carrier" falls into two parts: that which it voluntarily undertook under the terms of its policy contract, and that which was then and there imposed upon it by law. This involves the necessity of giving written notice by registered letter to the other party, and stating when, and not less than ten days thereafter, cancellation shall be effective. This notice was not given until after December 15th, the date upon which liability arose. The uncontradicted proof is that the "assured" received such notice through the "mails" (but not "registered mails") cancelling the policy as of twelve-one noon on December 28th, 1932. Hence the policy was in full force and effect until twelve-one noon on that date, looking at the matter in the light most favorable to the "carrier." Since the accident which gave rise to the claim upon which its liability becomes operative occurred prior to that date, the policy cannot be avoided upon the theory of cancellation.

The rule is well settled that where a valid contract of insurance has been effectuated, the company cannot cancel the policy without consent of insured, except where it may be permitted to do so by statute, or by a reservation in the policy itself. The principle that underlies this rule is that which precludes a party from destroying existing contract rights except upon a strict observance of the reservations contained in the contract itself, or some statute, or by agreement or waiver of his rights by the other party. 2 *Joyce Law of Insurance* (*2d ed.*), §§ 1660-1670.

In view of the only question presented (and we have considered no other question), it seems clear that the determination and judgment brought up for review must be affirmed, with costs, and it is so ordered.