SADIE PAUL, PLAINTIFF-RESPONDENT, v. THE COLUMBIAN NATIONAL LIFE INSURANCE COMPANY, DEFENDANT-APPELLANT.

Argued May 22, 23, 1940—Decided October 10, 1940.

For the appellant, *Osborne, Cornish & Scheck* (*Abram H. Cornish, Ervin S. Fulop* and *Frederick H. Nash* (of the Massachusetts bar), on the brief).

For the respondent, *Henry P. Brown* (*Edward Gaulkin,* of counsel).

The opinion of the court was delivered by

PERSKIE, J. This is a suit on a life insurance policy. The basic question involved is whether the cancellation or termination of the policy by the insurer was, under the proofs of the case, proper. The answer to that question depends upon the legal effect which is to be given to the transaction between the insurer and its assured concerning the purported payment by the assured of the third annual premium of the life insurance policy in issue. If the transaction was in fact a loan, then the trial judge correctly concluded that, in the absence of the required notice of forfeiture that the insurer's cancellation of the policy was improper; but if the transaction was in fact the payment, or the extension of the time for payment, of the premium under the policy then the cancellation was proper.

The record submitted consists in part of stipulated facts and in part of oral testimony.

Sadie Paul, plaintiff below and respondent here, is the beneficiary of a life insurance policy issued to her now deceased husband, Samuel A. Paul, by The Columbian National Life Insurance Company, defendant below and appellant here. The policy was issued on December 12th, 1928, and the assured paid the first and second year's premium in the sum of $263.60 each. He was apparently unable to pay the third premium within the thirty-one day grace period allowed after the expiration of the second year. Upon the payment of this year's premium, but not before, the policy would have had a loan value of $216.20.

Within the grace period defendant and its assured entered into an arrangement concerning the third annual premium of $263.60. By this arrangement, defendant agreed to loan its assured the sum of $216.20 which was the amount of the cash surrender or loan value of the policy after the payment of the third annual premium. The assured and his beneficiary executed and delivered to defendant an assignment of the policy. Additionally, assured executed and delivered his promissory note to defendant in the sum of $60.37, payable on April 12th, 1931, $47.40 of which was the balance due on the third annual premium and $12.96 of which was the interest in advance on the policy loan.

The assignment of the policy, as security for the policy loan of $216.20 provides: "* * * and if at any time when the total indebtedness against said policy, including any unpaid premiums, *together with interest thereon,* shall equal or exceed the loan value of said policy, default shall be made in the payment of this loan or any interest thereon, the said policy shall (*provided thirty-one days' notice has been mailed* to the last known address of the insured) be canceled by said company and all insurance thereunder terminated." (Italics supplied.)

The note for $60.37, on the other hand, does not provide for the thirty-one days' notice. It provides: "This note shall be a lien upon the policy in event of my death before it is paid and is given with the full knowledge and intent on my part that if it is not paid when due, without grace, said policy shall, without further notice, become void and the insurance

thereunder terminate as of the date to which premiums have been paid in cash."

Defendant gave the assured a receipt which stated that "The premium represented by this receipt has been paid in whole or in part by note and this receipt is issued and accepted upon the understanding that if any such note be not paid when due the insurance will terminate, except as provided in the policy."

Defendant notified the assured of the due date of the note before April 12th, 1931, but since no part of the note was paid to defendant, the latter noted upon its records that the policy had lapsed. No notice of termination was given to assured. Plaintiff introduced testimony to show that agents of defendant company attempted to collect the note after its due date and non-payment. The purpose of this testimony, however, was to throw light on the nature of the original transaction entered into between the parties since it is agreed that no agent or agents of the defendant had any authority to waive any terms or conditions of the policy or of any of the instruments. The note was returned from defendant's Newark office to its home office in Boston where it was retained in the files.

On November 26th, 1931, Samuel A. Paul, the assured, died.

Sadie Paul, the plaintiff-respondent, filed suit against defendant on October 7th, 1936, seeking to recover, as beneficiary, the face amount of the policy less the amount of the loans upon it.

The policy, as issued, contained the following provision concerning forfeiture: *"Non-payment of a loan or interest shall not avoid the policy* until the total indebtedness exceeds the cash value thereunder, *nor until thirty-one days after the company has mailed notice* of such termination to the insured and assignee of record, if any, at their last known address." (Italics supplied.) The last quoted provision is in accordance with *R. S.* 17:34-16 which prohibits life insurance companies from issuing policies containing provisions "for forfeiture of the policy for failure to repay any loan on the policy or to pay interest on the loan until the total

indebtedness on the policy is less than the loan value thereof, *or for forfeiture for failure to repay the loan or to pay interest thereon* unless the provision contains a stipulation that no such forfeiture shall occur *at least until one month after notice has been mailed by the company* to the last known address of the person to whom the loan was made." (Italics supplied.)

Although the plaintiff contended that defendant's conduct or treatment of the transaction is inconsistent with its claim of forfeiture, her chief contention is that the note for $60.37 is a policy loan, that *R. S.* 17:34-16 and the above quoted portion of the policy are applicable, and that since defendant company failed to give the proper one month's notice of forfeiture, it is liable on the policy. Defendant, on the other hand, contends that the note for $60.37 was neither a loan nor a policy loan but was an extension of the time for the payment of the premium, and that, therefore, in accordance with the terms of the note and the receipt, the policy lapsed immediately upon the non-payment on the due date and defendant is not liable on the policy despite its failure to give a month's notice prior to forfeiture.

The case was tried by Circuit Court Judge Joseph L. Smith, sitting without a jury, and was, as we have noted, submitted to him in part on oral testimony and in part on stipulation of facts. He found "that the premium note, so called, was a policy loan, and although the company was entitled to cancel the policy, it was its duty to give, under the provisions of the statute, as well as the policy, the thirty-one day's notice of such termination. Not having done so, the policy remained valid for the third year, during which the insured died."

Damages of the plaintiff were assessed at $9,708.65 (the policy of $10,000 less the amount of the loans upon it) and $4,750.56 interest (six per cent. from November 26th, 1931, to January 22d, 1940). Judgment was entered on January 23d, 1940, for $14,459.21 plus $76.46 costs.

Defendant challenges the propriety of that judgment.

We now turn to the basic question involved to the end of determining whether the trial judge reached a proper result.

*Cf. Central Railroad Co.* v. *State Tax Department,* 112 *N. J. L.* 5, 16; 169 *Atl. Rep.* 489. We conclude that the trial judge did reach a proper result.

1. We have seen that *R. S.* 17:34-16 prohibits a forfeiture in the absence of one month's notice not only upon the failure of the assured to repay a loan on the policy but also upon the failure to pay interest thereon. In light of the stipulation that $12.96 of the note for $60.37 was for "interest in advance of the policy loan," it seems altogether clear that, to the extent indicated, the note squarely comes within the purview of the statute requiring a month's notice prior to the forfeiture or termination of the policy. We so hold.

2. Additionally, in determining whether the transaction is a loan or the payment of a premium, it is well to bear in mind that "* * * The word loan * * * must not be too strictly construed. * * * It is not necessary to the creation of a loan, that money should be paid on one hand and received on the other; for the circumstance of a man's money remaining in another's hands, in consequence of an agreement for that purpose, will equally constitute a loan." *McAdams* v. *Randolph,* 41 *N. J. L.* 218, 221.

It is stipulated that "* * * an arrangement was proposed and put into effect between the assured and the defendant company for covering the third annual premium in the sum of $263.60 upon said policy." Obviously, both parties thus intended that the policy be continued. We, therefore, hold that the arrangement for the loan of $216.20 and the loan of $60.37 represented by the note, were part of the same transaction which had but a single purpose. Thus, if the former is a policy loan, and it is, the latter is also. Although the note and the receipt did not clearly define, or even attempt to define, the nature of the transaction, "* * * The part of the annual premium for which a note was to be given was, in substance and effect, a loan of so much money by the Company to assured. * * * If the money had been actually paid to the Company, and the next moment loaned back, and the note then taken, there would not have been room even for a quibble upon the subject. Why go through such a ceremony? Why not go directly, as was done, to the

end in view? The intent which animated the conduct of the parties determines its character." *The Brooklyn Life Insurance Company of New York* v. *Dutcher,* 95 *U. S.* 269; 24 *L. Ed.* 410, 411.

Nor does the fact that defendant, in its contract with the assured, included the statutory requirement as to notice in event of default in negotiating the loan for $216.20 and failed to include the same in the note for $60.37 in any way alter the single intended purpose for which both were given. To point to the failure of the parties to contract in accordance with the statute, as to the note, as evidence to the effect that both parties were not engaging in a loan is to beg the issue, when, as here, defendant, who may fairly be assumed to have been familiar with the statutory requirements, stands to profit by a violation of them.

If in fact the note for $60.37 was in excess of the contractual cash surrender value of the policy, it was so, to no greater extent, than was the conceded policy loan of $216.20 since the policy had no contractual loan value whatever until after the payment of the third annual premium. The fact that there were formal and substantial differences in each, is beside the point. Both were designed to attain the same objective. Both must necessarily stand on the same footing.

The transaction involved is to be distinguished from a transaction where a note is taken in payment of an antecedent debt. In such a situation, it is well settled that the note merely extends the credit until the note matures. *Pignone* v. *Brooks,* 120 *N. J. L.* 258; 199 *Atl. Rep.* 372; *Union Cleaners and Dyers, Inc.,* v. *Zeidman,* 113 *N. J. L.* 86; 172 *Atl. Rep.* 546; *J. Jacob Shannon & Co.* v. *Continental, &c., Co.,* 106 *N. J. L.* 200, 202; 148 *Atl. Rep.* 738. In the case at bar, however, prior to the delivery of the note, the assured was not in any way bound to pay the premium and continue the policy. A premium is not an obligation of the policyholder. *Manufacturer's Trust Co.* v. *Equitable Life Assurance Society,* 279 *N. Y. S.* 457. By giving his promise to pay the note, the assured incurred a personal obligation, suffered a detriment, and bestowed a benefit upon defendant. That is valid and binding consideration for the continuance

of the policy. It is more than a mere extension of credit. That defendant had the power to terminate the policy if the note was not paid upon its due date was merely an additional condition for defendant's security not in anywise mitigating the liability of the assured or altering the nature of his obligation. This condition, however, must comply with the regulation of the statute.

In fine, we hold that the trial judge correctly concluded that the transaction between the insurer and its assured was a loan, and that since defendant failed to give the required statutory notice of forfeiture the termination of the policy was improper.

We have examined all other points argued and find them to be without merit.

Judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, PARKER, CASE, BODINE, DONGES, PERSKIE, PORTER, DEAR, WELLS, WOLFSKEIL, RAFFERTY, HAGUE, JJ. 13.

*For reversal*—HEHER, J. 1.