47 N.J. Super. 434 (1957)
136 A.2d 36
WALTER J. KROMENSKI, ET AL., PLAINTIFFS,
v.
GERALD MEYER, DEFENDANT, AND THIRD-PARTY PLAINTIFF-APPELLANT, AND ATLANTIC CASUALTY INSURANCE COMPANY AND DENNIS EPPERSON, THIRD-PARTY DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued September 30, 1957.
Decided November 18, 1957.
*436 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry Cohn argued the cause for third-party plaintiff-appellant (Mr. Cohn, attorney and of counsel).
Mr. Jerome S. Lieb argued the cause for third-party defendants-respondents (Messrs. Harkavy and Lieb, attorneys and of counsel).
The opinion of the court was delivered by FREUND, J.A.D.
This is an appeal from a judgment of involuntary dismissal, entered in the Law Division, dismissing Meyer's third-party complaint against the third-party *437 defendants, Atlantic Casualty Insurance Company and Dennis Epperson. In the main action, not involved in this appeal, the plaintiffs, Kromenski and another, obtained two judgments, totaling $17,000, against Meyer for damages as the result of an automobile accident. Meyer's third-party action against the company and its employee Epperson is predicated on the existence at the time of the accident of a policy of automobile liability insurance covering his liability in respect to the accident. Meyer appeals from the judgment of dismissal granted at the close of his case in the third-party action.
On June 11, 1955 Gerald Meyer, the third-party plaintiff, was the owner and operator of an automobile which was involved in an accident with an automoblie owned and operated by Walter J. Kromenski, with resulting injuries to Kromenski and to Barbara Kromenski, a minor. They instituted suit against Meyer, whereupon he filed a third-party complaint against the Atlantic Casualty Insurance Company and Dennis Epperson. The first count of the third-party complaint alleged that at the time of the accident with the Kromenskis, Meyer was insured by the defendant insurance company for automobile liability in the amount of $10,000 for each person and $20,000 for each accident, and was entitled to indemnification within the limitations of the policy, together with a defense to the Kromenski action. The second count sought a judgment against the defendant Dennis Epperson, as the duly authorized agent and representative of the third-party Atlantic Casualty Insurance Company. After answers to the Kromenski suit were filed by Meyer and by the third-party defendants, the latter moved for a summary judgment in their favor on the third-party complaint, which was denied. The pretrial order directed that the two causes of action be severed for trial and that the complaint involving the accident be tried first.
The cause of action of the Kromenskis against Meyer was tried with a jury and resulted in judgments against Meyer in favor of Walter J. Kromenski, as guardian ad litem of Barbara Kromenski, an infant, for $12,000, and in favor of *438 Walter J. Kromenski for $5,000, with costs. Both judgments remain unpaid. Subsequently, the third-party cause of action of Meyer against the insurance company was moved for trial. At the conclusion of the third-party plaintiff's case, the defendants moved for a dismissal of the third-party complaint and the entry of a judgment in their favor, which was granted.
The trial judge in disposing of the motion concluded that delivery of the insurance policy was conditioned upon payment of the premium according to the understanding between the parties; that when Meyer did not have the money, Epperson became concerned and Meyer therefore surrendered the policy to Epperson with the intention that the policy would not be in force until Meyer paid the initial premium; and that Epperson was acting within the scope of his authority.
The testimony discloses that Meyer and defendant Epperson had been friends for two years prior to May 1955. They were both members of the "Jim Ryan Association." Epperson was a branch manager of the Automobile Association of New Jersey, which is the sole general agent and manager of the Atlantic Casualty Insurance Co. and which is the owner of the majority of the stock in that company. Both companies had offices at the same address and Epperson had his name on the front door of the office as "Branch Manager." In June 1955 he was a duly licensed insurance agent. He was authorized to countersign liability insurance policies issued by the Atlantic Casualty Insurance Company, and received commissions for premiums on such policies.
Meyer, being the owner of an automobile, was solicited by Epperson for automobile liability insurance. In the early part of May 1955 Meyer made an application for such insurance and left it, in the absence of Epperson, at his office with the person in charge. The application contained several options with respect to the payment of insurance premiums and Meyer chose the plan of "monthly payment  minimum $10 or 10%, whichever is greater per month." When Epperson saw Meyer, he expressed his appreciation for the business *439 and stated that when the application was approved by the home office, he would type the policy and deliver it to Meyer. On June 3, 1955 Epperson unconditionally delivered the policy to Meyer at Ryan's Tavern. Meyer testified that when the delivery was made he told Epperson that he "didn't have the first payment, I would probably have it in a couple of days," and Epperson said "it would be all right with him." The next occasion, June 7, when they saw each other at the Ryan Association, Epperson asked Meyer if he had the first premium payment and Meyer told him he was behind in the payment due on his car and wanted to pay it first. Meyer testified that when Epperson said "he felt he should have the policy back so to make him feel better" he got the policy from his car and gave it to Epperson. Meyer further said that Epperson told him "he would hang onto the policy for me a few days until I had the premium, the first premium." In the afternoon of June 10, when they saw each other at Ryan's, Epperson again asked for payment and Meyer testified that in reply he said "No * * * but I will definitely probably (sic) have it next week * * * I will let you know one way or the other," and Epperson said "All right."
The following day, June 11, at about 6 P.M., the accident occurred with the Kromenskis. Later that night Meyer saw Epperson at Ryan's Tavern and for the first time was told by Epperson that the policy had been canceled. Meyer testified that he then told Epperson that he wanted to know by what authority he had canceled the policy. Epperson replied that the policy had been canceled the day before on June 10. On Monday following the accident Meyer filled out the report of the accident and mailed it to the insurance company. Meyer's explanation of why he filled out the report and mailed it to the insurance company, notwithstanding the fact that Epperson had told him that the policy had been canceled, was that "in my estimation I believed I was fully covered yet."
On cross-examination, Meyer, when asked if he knew that the first payment of premium had to be made when he received the policy, replied that he did not know he had to *440 pay it right away. When asked why Epperson was worried, Meyer testified that Epperson had asked him about payment and said he would feel better if "he (Epperson) could hang onto the policy" and "he said he would." He believed that Epperson had said he was not supposed to issue the policy without payment of the premium. He also testified, over the defendants' objection, that in a discussion as to whether or not the policy was still in force on June 7 when he handed the policy back to Epperson, "he (Epperson) told me I would still be fully covered." The trial judge said, in overruling the objection, that it was a question of whether or not there was any surrender and held that Epperson's statement would be binding on both parties as to their intention.
The testimony of Joseph P. Derrig corroborated Meyer's testimony as to the circumstances of the return of the policy to Epperson. Derrig said he was present at Ryan's when Meyer handed the policy to Epperson, and Epperson said, "I will hang on it. I will hold it for you until you give me the money, until you pay me."
On this appeal, the appellant argues that the evidence and the inferences to be drawn therefrom presented factual questions to be submitted to a jury for its determination; that there was no conditional delivery of the policy to the insured, or voluntary surrender with the intent or consent that it be canceled, and therefore there was no valid or effective cancellation of the policy prior to the accident.
On a motion for dismissal, all the plaintiff's evidence that supports his cause of action must be taken as true, together with all the reasonable inferences drawn therefrom. When this has been done, if fair-minded men might honestly differ as to whether or not the effectiveness of the policy in question was conditioned upon the prepayment of the first installment of premium and whether or not the plaintiff surrendered the policy with the intent that it be canceled, the proofs must be submitted to the jury for its determination. Melone v. Jersey Central Power & Light Co., 18 N.J. 163, 170 (1955). The facts upon which plaintiff relies have been outlined in their most favorable light in relation to the *441 proofs and the reasonable inferences therefrom, in anticipation of the application of the rule on the motion.
It is generally held that a contract of insurance, like any other agreement, depends upon the intention of the parties. Reck v. Prudential Ins. Co., 116 N.J.L. 444 (E. & A. 1936); Paul v. Columbian National Life Ins. Co., 125 N.J.L. 350, 356 (E. & A. 1940); 29 Am. Jur., Insurance, § 157, p. 172; Vance, Insurance (3d ed. 1951), § 45, p. 268. In the absence of an express provision to the contrary, the actual prepayment of the premium on a policy is neither essential for a contract of insurance to be valid nor a condition precedent to the inception of the policy and the assumption of the risk by the insurer. 14 Appleman, Insurance Law and Practice (1944), § 7834, pp. 11-12; 29 Am. Jur., Insurance, § 153, p. 168, and 1957 Cum. Supp., p. 24. Insurance, as well as commodities, may be sold on credit, and the extension of credit by the insurer or its agent is sufficient to bind the insurer  a promise to pay is a valid consideration. 14 Appleman, op. cit., supra; Paul v. Columbian National Life Ins. Co., supra.
Epperson's action in delivering the policy to Meyer, regardless of whether or not he was authorized to deliver the policy without payment of the premium as provided in the contract, in effect constituted a waiver of the premium payment at that moment. The assurance to the insured that an extension was granted for the payment of the premium constituted a waiver and was within the apparent scope of his authority, as was held in Yannuzzi v. U.S. Casualty Co., 19 N.J. 201, 208-210 (1955), Annotation 118 A.L.R. 1072 (1939). See also Eureka-Maryland Assur. Corp. v. Samuel, 191 Md. 603, 62 A.2d 622, 627 (Ct. App. 1948); Western & Southern Life Ins. Co. v. Brueggeman, 323 Ill. App. 173, 55 N.E.2d 719 (App. Ct. 1944). The testimony supports the view that Epperson was clothed with apparent authority to act as he did by virtue of the offices and title he held. He had the authority to write and countersign policies and to receive, on behalf of the insurer, the premiums due on policies. His acts must be held to bind the company in the *442 absence of proof that he was not so authorized and that Meyer had knowledge, when the policy was delivered to him, that Epperson may have exceeded his authority.
We may observe that it does not clearly appear from the proofs that payment of the first installment of the premium was actually a condition precedent to the issuance of the policy. The method of payment as specified in the policy is to be most strongly construed against the insurer. The proofs here refute the requirement of a down payment since the monthly payment option taken by plaintiff does not require a down payment of the first installment, as do other part payment options available under the policy. Cf. Erie Railroad Co. v. American Automobile Ins. Co., 36 N.J. Super. 159 (App. Div. 1955). We therefore conclude that upon delivery of the policy to the plaintiff, a valid contract of insurance became effective. Yannuzzi v. U.S. Casualty Co., supra.
The next and primary question to be determined is whether or not there was a voluntary surrender of the policy with the intent that it be canceled. The policy's language provided various methods for cancellation. The only method with which we are concerned is the physical delivery of the policy to the insurer or its agent by the insured with the expressed or implied intent to have it canceled. The question of its surrender by the insured is generally factual, dependent upon the intent of the insured in surrendering physical possession of the policy. The intent is to be gathered from a consideration of all the circumstances surrounding the physical act of re-delivery. 6 Couch, Cyclopedia of Insurance Law (1930), § 1419, p. 5052, and 1957 Supp., p. 121; 29 Am. Jur., Insurance, § 296, p. 271. Meyer testified that on June 7 when he gave Epperson physical possession of the policy, Epperson "told me I would still be covered." In overruling an objection to this testimony, the trial judge properly stated that the answer would be binding on both parties as to their intention. Derrig testified, in corroboration, that he heard the conversation between Meyer and Epperson when the policy was handed to *443 Epperson, who said he would hold the policy until Meyer made the required payment of premium. From the testimony it could be inferred by a jury that when Meyer related that Epperson said "he wasn't supposed to issue me the policy without the premium," he believed that Epperson was referring to an intra-company administrative practice rather than to Epperson's authority with respect to policy holders, particularly since the policy does not contain a provision that it is not effective unless the premium is paid. Meyer may well have considered that Epperson had the authority to keep the policy in force under the circumstances, including Epperson's express assurance when he took the policy back that Meyer was fully covered. If the plaintiff is given the benefit of all favorable inferences, the handing over of the policy to Epperson was not a voluntary surrender with the intent that it was to be canceled. The mere physical surrender by the insured of his insurance policy is not, standing alone, sufficient to establish a cancellation thereof. 6 Couch, op. cit., supra. The matter resolved itself into a disputed fact question to be determined by a jury. Datz v. Union Hill Hudson Corp., 12 N.J. Misc. 807 (Sup. Ct. 1934), affirmed 115 N.J.L. 246 (E. & A. 1935).
Another provision of the insurance contract stated that the company could cancel the policy by giving a ten-day written notice of cancellation. This provision was obviously not complied with. Giving the plaintiff the benefit of all proper inferences, it would appear that there was no effective cancellation of the policy by the insurer at any date prior to the happening of the accident.
In our consideration of the plaintiff's evidence and the inferences therefrom, it is our opinion that it was error to dismiss the third-party complaint at the close of the plaintiff's case.
Reversed and a trial de novo is awarded.