Arthur **PALARDY**

v.

**CANADIAN UNIVERSAL INSURANCE COMPANY and American Universal Insurance Company.**

**Civ. A. No. 3997.**

United States District Court
D. Vermont.

Oct. 7, 1965.

Douglas C. Pierson, Burlington, Vt., for plaintiff.

Ryan, Smith & Carbine, Rutland, Vt., and Elmer E. Johnson, III, Boston, Mass., for defendants.

GIBSON, District Judge.

## STATEMENT OF THE CASE

Plaintiff Arthur Palardy commenced this action on May 15, 1964 against defendants Canadian Universal Insurance Company and American Universal Insurance Company seeking payment of a judgment rendered on July 16, 1963

against the Moulton Ladder Manufacturing Company [hereafter, "Moulton"].

The complaint alleges that on or about February 8, 1961, Moulton sold a certain wooden extension ladder to the retail outlet store Lowe Brothers in Burlington, Vermont, and that on or about January 20, 1962 plaintiff purchased said ladder from the Burlington store of Lowe Brothers. It is further alleged that on June 21, 1962, while using said ladder, the plaintiff fell and sustained certain bodily injuries, that plaintiff brought a personal injury action against Moulton in this Court on July 16, 1963 and that judgment was rendered against defendant in favor of plaintiff for Thirteen Thousand Six Hundred Fifty Dollars ($13,650) plus costs. It is alleged that said judgment remains completely unpaid.

It is further alleged that prior to the foregoing dates, defendant Canadian Universal Insurance Company had issued to Moulton as the insured therein an insurance policy under the terms of which the insurer agreed to pay all sums which Moulton should become legally obligated to pay for bodily injury sustained by any person, caused by accident and arising out of ladders manufactured, sold, handled or distributed by Moulton. It is alleged that this policy was in full force and effect at all times up to and including the time that the plaintiff sustained bodily injury as a result of defects in the manufacture of Moulton's ladder, and that the liability of defendants is coextensive with Moulton. The plaintiff demands judgment against defendants in the amount of $13,650 plus interest and costs of this and the preceding suit.

The defendant answered and interposed the defense that the policy in question was cancelled on April 5, 1962 and that said policy by its terms applied only to "accidents which occur during the policy period".

The parties have submitted an Agreed Statement of Facts to this Court, and in addition thereto, a trial was had before this Court on September 9, 1965.

## FINDINGS OF FACT

1. Plaintiff is a citizen of the State of Vermont.

2. Defendant, American Universal Insurance Company, herein called Defendant American Universal, is a Rhode Island insurance corporation with a principal place of business at 144 Wayland Avenue, Providence, Rhode Island, and licensed to transact insurance business in the State of Vermont.

3. Defendant Canadian Universal Insurance Company, hereafter called Canadian, is an insurance corporation organized under the laws of the Province of Newfoundland, Canada with an office at 144 Wayland Avenue, Providence, Rhode Island and transacting insurance business in the State of Vermont. At the time that it issued the insurance policies here in question the name of said defendant was Newfoundland American Insurance Company. (Hereafter Newfoundland will be referred to as "defendant Canadian".) Subsequent to said time, Newfoundland American Insurance Company changed its name to Canadian Universal Insurance Company.

4. Defendant Canadian is a wholly owned subsidiary of defendant American Universal.

5. The matter in controversy, exclusive of interest and costs, exceeds the sum of $10,000.

6. Moulton Ladder Manufacturing Company, a Massachusetts corporation with principal place of business in Somerville, (herein called Moulton) formerly engaged in the manufacturing of ladders which were sold in retail outlets in various parts of the United States.

7. Defendant Canadian issued its policy of "Manufacturers and Contractors Liability" No. NMCL–6478 to Moulton for the policy year July 1, 1961 to July 1, 1962. Said policy was identical to the policy issued to Moulton for the year preceding, with the exception that a lower deposit premium was collected on the latter of the two policies. The reason for the lower deposit premium was that Moulton had told defendant Ca-

nadian that it anticipated its ladder sales would be sharply reduced during the policy year July 1961–July 1962.

8. Said policy contained the following clause:

VI *Policy Period, Territory*: This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

9. On February 8, 1961, Moulton sold a 16-foot wooden extension ladder, which it had manufactured, to the Burlington Vermont store of Lowe Brothers. On January 20, 1962, the plaintiff herein, Arthur Palardy, purchased said wooden ladder from Lowe Brothers and on June 21, 1962 the plaintiff fell and sustained injuries for which recovery was granted in this Court on July 16, 1963. The amount of said judgment against Moulton was for the sum of $13,650 and costs after a trial in which Moulton was represented by counsel engaged by it and not by defendant Canadian. Summons and complaint in said action were forwarded to defendant Canadian by Moulton Ladder Manufacturing Company but were returned by Canadian Universal Insurance Company on October 3, 1962 to Moulton Ladder Company, with a refusal to defend and denial of any policy coverage of the plaintiff's claim. Said judgment has not been paid in whole or in part by defendants.

10. On April 5, 1962, Moulton wrote the following letter to defendant Canadian-Newfoundland:

MOULTON LADDER MANUFACTURING CO.

Newfoundland American Insurance Company, Ltd.
St. John, Newfoundland
c/o Maurice H. Saval, Inc.
22 Batterymarch Street
Boston, Massachusetts

Gentlemen:

This is to advise you that the Moulton Ladder Manufacturing Company, Inc., 2–40 Harding Street, Somerville, Massachusetts, insured by you under policy No. NMCL–6478, has ceased to manufacture and sell its products. Accordingly, under the terms of said policy in paragraph 20 thereof, the insured, the Moulton Ladder Manufacturing Company, Inc. hereby gives written notice to you that it has cancelled and terminated said policy of insurance, effective forthwith, upon receipt of this notice.

Your company, having been paid its required premium on all products manufactured from July 1, 1961, to date, and under previous yearly policies issued by your company, we wish to make it clear to you that your existing policies of insurance are to continue applicable to all products of Moulton, described in said policies, manufactured, sold and delivered prior to the effective date of cancellation. Any attempt to terminate your liability on products so manufactured, sold and delivered will be treated by Moulton as a breach of its contract with you and due report thereof shall be made to the State Department of Insurance, in addition of pursuing all other legal rights.

Sincerely yours,
MOULTON LADDER MANUFACTURING
By /s/ Richard H. Moulton
Richard H. Moulton, Pres.

At the same time, the policy was returned to defendant Canadian.

11. On April 25, 1962, defendant Canadian wrote the following reply letter to Moulton:

### NEWFOUNDLAND AMERICAN INSURANCE CO. LTD.

Mr. Richard H. Moulton, President
Moulton Ladder Manufacturing Company, Inc.
2–40 Harding Street
Somerville, Massachusetts

We acknowledge receipt of your letter of April 5, 1962, enclosing Policy No. NMCL–6478 for cancellation as at April 1, 1962.

With reference to the last paragraph of your letter, we respectfully refer you to Insuring Agreement VI of the policy and entitled "Policy Period, Territory". Said Insuring Agreement is quoted below:

"VI Policy period, Territory: This policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada."

It is quite clear that this policy only covers accidents that occur within the policy period. Thus, if any accident occurs subsequent to the termination of this policy, such accident would not be covered.

Very truly yours,

NEWFOUNDLAND AMERICAN INSURANCE CO., LTD.

By /s/ J. Saval
J. Saval, Secretary

12. On May 1, 1962 George A. McLaughlin, Esq., attorney for Moulton wrote the following letter to defendant Canadian:

### THE McLAUGHLIN BROTHERS

Mr. J. Saval, Secretary
Newfoundland American Insurance Co., Ltd.
144 Wayland Avenue
Providence 1, Rhode Island

In re: Policy No. NMCL–6478

Dear Mr. Saval:

Your letter to Richard H. Moulton, President, Moulton Ladder Manufacturing Company, Inc., dated April 25, 1962, is hereby acknowledged.

So that there may be no possible doubt about our position relative to Policy No. NMCL–6478, which you are cancelling on April 25, 1962, as of April 1, 1962, it is the position of this company that your company has been paid a premium covering all products manufactured and sold by the Moulton Ladder Manufacturing Company under your in-

suring agreements as to those products manufactured and sold up to and including April 1, 1962.

In no sense do we accept the construction that this policy applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

Sincerely yours,

Attorney for Moulton Ladder Manufacturing Company

———◆———

13. Defendant Canadian made no reply to Attorney McLaughlin's said letter; there was no other communication or discussion with regard to the subject of cancellation of said policy prior to September 1962.

14. Policy No. NMCL–6478 of defendant Canadian provided:

"Cancellation: This policy may be cancelled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter the cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but pay-ment or tender of unearned premium is not a condition of cancellation."

15. Said policy in addition provided by way of indorsement:

"3. *Computation of the Guaranteed Loss Ratio Premium After Expiration*

Within 6 months after the expiration date of this policy, or cancellation of this endorsement or the policy to which this endorsement is attached, the Company shall make an audit of the records of the named Insured in order to compute the earned standard premium. Within 8 months after the expiration or cancellation date of this policy or endorsement, the Company shall determine the amount of incurred losses, as of the date 6 months after such expiration or cancellation.

From the incurred losses so determined the Company shall then make the initial computation of The Guaranteed Loss Ratio Premium.

4. *Subsequent Recomputation of Guaranteed Loss Ratio Premium*

6 months after initial computation, the Company shall recompute the Guaranteed Loss Ratio premium on the basis of the Company's determination of the amount of the incurred losses, as of the date 12 months after the expiration or cancellation date of this policy or endorsement.

The Guaranteed Loss Ratio Premium determined by the first recomputation shall be the final premium for this policy unless, by mutual agree-

ment between the Company and the named Insured, such final date shall be changed.

5. *Payment of Premium*

(a) Standard Premium—The named Insured shall pay to the Company the Standard Premium.

(b) Guaranteed Loss Ratio Premium—After the Company has made the first interim computation of the Guaranteed Loss Ratio Premium, the named Insured shall pay to the Company the difference between the Guaranteed Loss Ratio Premium and the Premiums earned during the period covered by this adjustment, and previously paid to the Company, if the Guaranteed Loss Ratio Premium is greater than such premiums previously paid. The Company shall return to the named Insured the difference between the Guaranteed Loss Ratio Premium and such premiums previously paid to the Company, if the Guaranteed Loss Ratio Premium is less than such premiums previously paid. Corresponding adjustment shall be made at the time of each subsequent computation of the Guaranteed Loss Ratio Premium.

6. *Cancellation*—Cancellation of the policy automatically shall cancel this endorsement.

(a) *Cancellation by the Named Insured*—In the event of cancellation by the named insured, the standard premium shall be computed in accordance with the customary short rate table and this also shall be the minimum Guaranteed Loss Ratio Premium.

(b) *Cancellation by the Company*—In the event of cancellation by the Company of this endorsement or the policy to which it is attached, the standard premium shall be the premium of this policy computed in accordance with its provisions pro rata for the period up to the cancellation date; and the Guaranteed Loss Ratio Premium shall be computed on the basis of such standard premium.

In the event of cancellation by the Company for non-payment of premium, the standard premium shall be computed as provided in subsection (a) of provision 6 of this endorsement."

16. As a result of Moulton's April 5, 1962 letter to defendant Canadian, defendant Canadian knew that Moulton had ceased to manufacture and sell ladders as of the date of said letter.

17. Defendant Canadian had issued to Moulton a policy for the period July 1960 to July 1961 with substantially the same terms and conditions as the policy for July 1961 to 1962, save for a lower initial or deposit premium. As to the 1960 to 1961 policy, defendant had, prior to April of 1962, made a recomputation of the policy premium based upon Moulton's ladder sales for the 1960–1961 policy period. In April of 1962, it made a computation for said 1960–1961 policy based upon Moulton's loss experience.

18. During the month of April, 1962 and after Moulton had written its April 5 letter to defendant Canadian, Moulton voluntarily submitted to Canadian an audit of its business for the period up to April 1962; as a result of this audit, Canadian made a recomputation of the policy for the year July 1961 to 1962 based on Moulton's sales. Said recomputation based upon Moulton's sales was the only computation made by Canadian for the July 1961–1962 policy premium. Defendant Canadian made no computation or recomputation of premium either 6 or 12 months after Moulton's April 5 letter based upon Moulton's loss experience as provided in Section 4 of the aforementioned endorsement (Finding #15). Nor did defendant Canadian make any computation of the standard premium for said policy in accordance with the customary short rate table.

19. The audit of sales submitted to Canadian in April 1962 indicated that Moulton was entitled to a premium refund of $1437.02, and such refund was allowed to Moulton through its broker. There is no evidence that Moulton either

received this refund or otherwise received credit for it prior to plaintiff's accident.

20. Defendant Canadian did not cancel said policy prior to plaintiff's accident.

21. The defendant Canadian did not defend the case of plaintiff vs. Moulton, refused to do so, and after judgment was rendered in that case, plaintiff's counsel were forced to put in a great deal of effort and time investigating ways and means of collecting the judgment and in trial of the case, and this Court finds that $2000 is the reasonable attorneys' fee for all their effort, preparation and trial work in this case.

## CONCLUSIONS OF LAW

The defendants have argued that there is no coverage in this case because the policy in question was cancelled prior to the plaintiff's accident. However, it is not necessary in disposing of this case to reach this issue, as, in this Court's opinion, the policy was never effectively cancelled by Moulton.

■ The burden of proving that the policy was cancelled by Moulton is on the defendants. 29 Am.Jur. Sect. 1841.

■ Whether the conduct of an insured will constitute cancellation of a particular policy depends upon the intent of the insured as gathered from all the facts and circumstances surrounding the purported cancellation. State Farm Mutual Automobile Ins. Co. v. Pederson, 185 Va. 941, 41 S.E.2d 64; York v. Sun Ins. Office, 66 Ind.App. 269, 113 N.E. 1021.

■ The acts of cancellation relied on by defendants in this case are (1) surrender of the policy and (2) Moulton's April 5, 1962 letter to defendant's predecessor, the Newfoundland American Insurance Company. However, the mere physical surrender of a policy by the insured to the insurer, standing alone, does not terminate the insurance contract. The surrender is merely evidence to be considered as bearing upon the intent of the insured to cancel, and whether there is such an intent must be gathered from the circumstances surrounding the surrender. Couch, Cyclopedia of Ins. Law (1930) Sect. 419; Dill v. Lumbermen's Mutual Ins. Co., 213 S.C. 593, 50 S.E.2d 923; Kromenski v. Meyer, 47 N.J.Super. 434, 136 A.2d 36. Cancellation, therefore, cannot be predicated solely upon Moulton's surrender of the policy.

■ Defendant's position is that along with surrender of the policy, Moulton, by its letter of April 5, gave notice to Canadian that it was cancelling pursuant to Section 20 of the policy. However, the law is well established that a notice to cancel must be clear, unconditional and unequivocal, Couch, Cyclopedia of Ins. Law (1930) Sect. 1442. State Farm Mutual Automobile Insurance Co. v. Pederson, supra; York v. Sun Ins. Office, supra, and that a cancellation when made under the terms of the policy, must strictly comply with such terms. Suennen v. Evrard, 254 Wis. 565, 36 N.W.2d 685, 8 A.L.R.2d 200. In its April 5 letter, Moulton notified the Newfoundland Insurance Company that the existing policy was " * * * to continue applicable to all products of Moulton described in said policies, manufactured, sold, and delivered prior to the effective date of cancellation." Cancellation is clearly conditioned upon Newfoundland's continuing liability for accidents arising out of prior ladder sales, and Moulton's intention to cancel only on the condition that such continuing coverage be available is clearly established by the evidence.

■ Defendants place considerable reliance upon certain premium computations made after receipt of Moulton's April 5 letter, and upon an alleged premium refund to Moulton of $1437.02 in April of 1962. These, however, have no bearing upon the intent of Moulton to cancel the policy.

As to the computations, Mr. Jacob Saval, an official of both defendants, testified that said refund was based upon an audit submitted to Newfoundland by Moulton, and upon Moulton's sales for the policy year 1961 to 1962. He fur-

ther testified that such was the only computation made to determine Moulton's adjusted premium for that year. It appears, therefore, that Newfoundland failed to comply with Section 3 of the policy endorsement (Finding No. 15), which provides for two computations upon cancellation of the policy, such computations to be based on loss experience.

 Since the plaintiff's written notice of April 5 was conditional and therefore failed to effectively cancel the policy, the endorsement providing for such computations was not cancelled either but still in effect, and the insurer was bound to comply therewith. Since the policy premium was not computed under the proper cancellation provision, the insurer cannot now argue that such computation as was made by it bears any relation to the issue of cancellation.

As to the $1437.02 refund, there is no evidence that such was ever tendered to Moulton or accepted by it. The fact that such a refund was computed, or "allowed through their broker" is not equivalent to receipt by the insured. There being no evidence that the alleged refund was received by Moulton, it can have no bearing upon Moulton's intent to cancel, nor is it evidence that Moulton acceded to cancellation on Newfoundland's terms.

As this Court interprets the policy, it was provided by way of endorsement that the insurer, upon expiration or cancellation, should make two computations based upon loss experience. Newfoundland's computation in this case was based on sales made by Moulton to April 5, 1962, when it notified Newfoundland that it had ceased to manufacture and sell ladders. The computation, therefore, bears no relation to the issue of cancellation.

Since the policy was not cancelled prior to the plaintiff's accident, the defendant Canadian is liable for the full amount of the judgment rendered against Moulton, together with costs of both this and plaintiff's action against Moulton, and interest on the judgment since the date of rendition. However, there is no evidence that defendant American acted in any way as agent or broker for defendant Canadian. As to defendant American, therefore, the complaint must be dismissed.

## ORDER

Therefore, it is ordered that the complaint is dismissed as to defendant American Universal Insurance Company. The defendant Canadian Universal Insurance Company is ordered to pay to the plaintiff the sum of Thirteen Thousand Six Hundred Fifty Dollars ($13,650) and interest at six per cent from July 16, 1963. The defendant Canadian is further ordered to pay plaintiff costs for said action by plaintiff against Moulton Ladder Manufacturing Company and costs for the present action. In addition, defendant Canadian is ordered to pay to the plaintiff's attorneys the sum of $2000 which represents a reasonable attorneys' fee for their effort, preparation and trial work in the present action.