822 F.2d 1316
 Henrietta KLECKNER, Individually and as Executrix of the
Estate of Donald S. Kleckner
v.
The MUTUAL LIFE INSURANCE COMPANY OF NEW YORK, a Corporation.
Appeal of the MUTUAL LIFE INSURANCE COMPANY OF NEW YORK.
 No. 86-5457.
 United States Court of Appeals, Third Circuit.
 Argued Feb. 18, 1987.
Decided June 30, 1987.
Rehearing and Rehearing In Banc Denied July 28, 1987.
 
 Bruce S. Edington (argued), Henry F. Wolff, III, Kraft & Hughes, Newark, N.J., for appellant.
 Charles A. Reid, III, Shanley & Fisher, P.C., Morristown, N.J., for appellee.
 Before SLOVITER and MANSMANN, Circuit Judges, and SCIRICA, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 The central issue we address in this diversity case is whether or not a policy insuring the life of Donald S. Kleckner became effective, and if so, what the effective date was, under New Jersey law. The district court, on cross-motions for summary judgment, granted the motion of Henrietta Kleckner, individually and as executrix of the estate of Donald Kleckner, entitling her to the proceeds of a $525,000 life insurance policy from Mutual Life Insurance Company of New York ("MONY"). Because the district court did not err, as a matter of law, in holding that the policy became effective on the date of delivery, we will affirm the judgment of the district court.
 
 I.
 
 2
 Donald Kleckner completed a two-part application for life insurance with the Mutual Life Insurance Company of New York on November 22, 1983. It is undisputed that at the time of application, all the representations were true to the best of Mr. Kleckner's knowledge. At that time Mr. Kleckner requested that MONY issue a $525,000 policy and an "alternate" $300,000 policy as well as financing papers from Key Resources, an insurance financing subsidiary. Mr. Kleckner requested the issuance of two policies because he was uncertain how much life insurance he could afford, and he was uncertain which policy would be most appropriate for his retirement goals. Kleckner was then examined by MONY'S Medical Examiner and found to be an insurable risk.
 
 
 3
 Both policies and finance papers were delivered to Kleckner on January 26, 1984 with the understanding that he was to examine the policies, select one for coverage, and return the rejected policy, along with the signed papers for the accepted policy and an initial premium payment.
 
 
 4
 In April, 1984 Mr. Kleckner was diagnosed with terminal cancer. Thereafter, on May 11, 1984, he mailed an initial premium payment of $1,989 to the insurance agent, in order to "put the MONY $500,000 (sic) life policy into effect" and reject the $300,000 policy. This premium payment was intended to pay for coverage as of the January delivery date. He made two other payments on the $525,000 policy before dying of cancer on August 13, 1984.
 
 
 5
 In December, 1984 Kleckner's widow submitted a claim for the face amount of the policy. MONY denied this claim and returned all monies paid, on the grounds that coverage had been rescinded because Kleckner had materially misrepresented his health status to MONY at the time of payment of his first premium.
 
 
 6
 On cross-motions for summary judgment, Henrietta Kleckner, the beneficiary of the policy, was awarded the full value of the $525,000 policy.
 
 
 7
 Our standard of review on motions for summary judgment is plenary. "Inferences to be drawn from the underlying facts contained in the evidential sources submitted to the trial court must be reviewed in the light most favorable to the party opposing the motion. The non-movant's allegations must be taken as true, and when these assertions conflict with those of the movant, the former must receive the benefit of the doubt." Goodman v. Mead Johnson & Co., 534 F.2d 566, 573 (3d Cir.1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977).
 
 II.
 
 8
 Although the policy issued provides expressly that coverage became effective upon delivery of the policy (January 26, 1984), MONY argues that it could not have become effective until May 11, 1984 when Kleckner remitted his initial premium payment. At that point, MONY argues, Kleckner had a duty to inform MONY of his changed health status and his failure to do so amounted to a material misrepresentation warranting rescission of the contract.
 
 
 9
 MONY's position is based on the following statements signed by Kleckner in his application for insurance:
 
 Part I, Paragraph 2 provides:
 
 10
 Payment of the 1st premium (if after the date below) will mean I represent that such statements and answers would be the same if made at the time of such payment.
 
 
 11
 Paragraph 3 provides in relevant part:... the policy will take effect on the date it is delivered, provided its delivery and payment of any required cost are made while each person to be insured is living.
 
 
 12
 MONY argues on appeal that no contract of insurance ever came into existence. Because we sit here in diversity, we turn to the law of New Jersey.
 
 III.
 
 13
 The courts of New Jersey have long adhered to the principle that insurance policies are not ordinary contracts, but are contracts of adhesion between parties who are not equally situated.
 
 
 14
 As the Supreme Court of New Jersey pointed out in Meier v. New Jersey Life Ins. Co., 101 N.J. 597, 503 A.2d 862 (1986), with such contracts New Jersey courts have given effect to the objectively reasonable expectations of the insured. The New Jersey Supreme Court recognizes "a basic tenet of insurance law that in interpreting insurance contracts any ambiguities should be construed against the insurer and in favor of the insured." Meier, at 612-613, 503 A.2d 862.
 
 
 15
 With these principles in mind, we turn to the contract and the facts of this case to determine whether a contract insuring Mr. Kleckner's life came into existence, and the effective date thereof. The application and the policy are considered together when evaluating the language of an insurance policy and together constitute the entire contract. (Policy p. 10).
 
 
 16
 The application provides that the effective date of the policy varies upon two conditions. If the policy is issued as applied for and the required premium has been received, the policy is effective on the date on which delivery is authorized. If the policy is issued other than as applied for, or as applied for but unpaid for, it is effective as of the date delivered, provided that delivery and payment of any required cost are made while the insured is living. (Emphasis added.)
 
 
 17
 There is no dispute that the policy was issued on December 20, 1984 and personally delivered to Kleckner by Kenneth P. Ambrogi, MONY's field underwriter, on January 26, 1984. The policy was issued as applied for but was, on the date given to Mr. Kleckner, "unpaid for." (The parties agree that two policies were given to Mr. Kleckner on January 26, 1984, but the premiums were subsequently paid only for the $525,000 policy.) Therefore, under the terms of the application, the contract of insurance became effective upon the date the policy was delivered to Mr. Kleckner, since premiums were paid during his lifetime.
 
 IV.
 
 18
 MONY presents several arguments to defeat the effective delivery of Kleckner's policy. The company's essential point is that no contract came into existence due to the failure of Kleckner to accept either policy until after he learned of his terminal cancer. The failure to notify the company of which policy he wished prior to discovery of the cancer, MONY argues, demonstrates there was no "meeting of the minds" on the essential contractual elements. Mony further contends that there was no mutuality of consideration and that the delivery was conditional.
 
 
 19
 MONY's argument misconceives the fundamental posture of this insurance contract setting. Simply stated, Kleckner's application constituted the offer to the insurance company to accept him as an insurable risk. The insurance company, by its own terms, accepted Kleckner's offer. The offer was solely to insure Kleckner's life, and the acceptance of that singular offer was complete upon MONY's delivery of the policy to Kleckner. The delivery of the dual policies did not create a counter-offer, reopen the negotiations, or create any ambiguities, as MONY appears to suggest.
 
 
 20
 In Klos v. Mobil Oil Company, 55 N.J. 117, 259 A.2d 889 (1969), the Supreme Court of New Jersey pointed out that generally an application for insurance constitutes an offer to the insurer which it may accept or reject. Klos, at 123, 259 A.2d 889. This protects the insurer by affording the company an opportunity to determine whether the applicant is a desirable risk. In this case, the fact that this was an offer by Kleckner is amply reinforced by the following statement in the application:
 
 
 21
 "I represent the statements and answers in this and in any other part of this application to be true and complete to the best of my knowledge and belief. I offer them to the Company to induce it to issue the policy or policies and to accept the payment of premiums therefor." (emphasis added)
 
 
 22
 In accepting, the company agreed that Kleckner was an insurable risk. Its mode of acceptance was delivery of the contract to Kleckner. The only condition on full effectiveness of the contract was that Kleckner pay the premium while still living. There is no dispute that this was done. The terms of the contract thus became fully effective as of the date of delivery of the contract--January 26, 1984.
 
 
 23
 MONY further maintains that Kleckner breached his agreement by representing that all the statements made in the application were true as of the time he remitted his first premium payment, when of course he knew of his terminal cancer at that point. This argument is of no consequence if the policy was effective as of the date of delivery. In this case, the provisions of the application are unambiguous in that the policy will be effective as of the date of delivery. The representation in dispute is thus an ineffective "good health clause." Once the policy is accepted and delivered it is effective. Since the policy was effective on January 26, 1984, the company cannot now rescind the policy due to events subsequent to its effective date. The representation statement in paragraph one was of no avail once delivery was made, for delivery triggered the effectiveness of the policy, not payment of the first premium. MONY, in arguing that there was no agreement upon the fundamental contractual elements, also submits that the request for alternate policies lacked sufficient certainty to ripen into an enforceable contract. This argument too misses the mark. Kleckner's offer was to invite the company to insure his life, which was in fact the risk MONY undertook. The offer did not invite acceptance of the risk of Kleckner's death only for a sum certain. The nature of the risk undertaken by MONY did not change dependent on the amount of coverage Kleckner requested. Moreover, under elementary principles of contract law the terms of a contract may be reasonably certain even though it empowers one or both parties to make a selection of terms in the course of performance. Restatement of Contracts 2d. Sec. 34(1) (1981). If the parties intended to make a contract and there is a reasonably certain basis for granting a remedy, alternative terms do not invalidate that contract. Id. at Comment a. Corbin is in agreement that the fact that the parties have left some matters to be determined in the future, should not prevent enforcement, if some method of determination exists, such as by virtue of the agreement itself. Corbin adds that this may be the case, even though the determination is left to one of the contracting parties. 1 Corbin on Contracts Sec. 95 (1963). See, Mantell v. International Plastic Harmonica Corporation, 141 N.J.Eq. 379, 55 A.2d 250 (1947).
 
 
 24
 MONY also contends that delivery was conditional because two policies were delivered to Kleckner. MONY contends that delivery of the insurance policy is essential for completion of a contract where the application or policy makes it a condition precedent to the attachment of risk. However, no such condition precedent existed in this case. If the insurance company had desired delivery to be a condition precedent, such a condition should have been spelled out clearly and unequivocally in the application.
 
 
 25
 In this case just the opposite occurred. That is, the policy was effective upon delivery subject to the condition subsequent that the premiums be paid while the insured was still alive.
 
 V.
 
 26
 Finally, MONY argues that no consideration was given by Kleckner until after he learned of his terminal cancer. The significance of the failure of consideration according to MONY is the failure of the whole contract. MONY insists that the determination by the district court that Kleckner's credit-worthiness was sufficient consideration is erroneous as a matter of law as creditworthiness cannot establish the requisite duty on Kleckner's part to pay insurance premiums. MONY argues that its own duty to pay arose only upon the first premium payment in May, 1984, or in the alternative, upon the promise to pay premiums which arose upon Kleckner's signing of the loan finance papers.
 
 
 27
 The district court correctly relied upon Kromenski v. Meyer, 47 N.J.Super. 434, 136 A.2d 36 (1957), cert. denied, 25 N.J. 537, 138 A.2d 78 (1958) wherein the general rule is stated that,
 
 
 28
 [i]n the absence of an express provision to the contrary, the actual prepayment of the premium on a policy is neither essential for a contract of insurance to be valid nor a condition precedent to the inception of the policy and the assumption of the risk by the insurer.... Insurance, as well as commodities, may be sold on credit, and the extension of credit by the insurer or its agent is sufficient to bind the insurer--a promise to pay is a valid consideration.
 
 
 29
 Kromenski, 47 N.J.Super. at 441, 136 A.2d 36. In Kromenski the court further found that delivery of the policy without payment of the premium as provided in the contract in effect constituted a waiver of the premium payment. Moreover, as it was not clear that payment of the first installment of the premium was actually a condition precedent to the issuance of the policy, the method of payment is to be most strongly construed against the insurer. Kromenski at 442, 136 A.2d 36.
 
 
 30
 In this case, there is no doubt that MONY found Kleckner to be creditworthy, and upon this finding, issued the finance papers. This constitutes valid consideration under Kromenski and under the rubric enunciated in Borbely v. Nationwide Mutual Insurance Co., 547 F.Supp. 959 (D.N.J.1981) that consideration involves a detriment incurred by the promise or a benefit received by the promisor, at the promisor's request. Borbely, at 980.
 
 
 31
 Internal memoranda of the company also indicate that the policy was considered to be in effect, notwithstanding the lack of the first premium payment. A memorandum from Steve Duffy, a senior credit and collection supervisor, indicated that
 
 
 32
 "the only way [Key Resources] know[s] that MONY has paid for a Key financial case is by the receipt of the signed finance paper and/or the policy number appearing on the 491 accounting journal. In the Kleckner case, we found out that the agency reported the case paid, according to the 491 journal, on February 7, 1984 but we had not received the signed finance papers on or about that date."
 
 
 33
 MONY misconstrues the nature of Kleckner's obligation in this venture. Kleckner's duty, as stated in the application, was to pay the premium while he was still living. This condition of coverage arose when MONY agreed to insure Kleckner's life. Had Kleckner never paid a premium, he would not have been insured.
 
 
 34
 Moreover, MONY received a substantial benefit by delivering the policies to Kleckner, as this effectively precluded Kleckner from obtaining insurance coverage from other carriers. And, Kleckner indeed paid the premiums; on May 11, 1984 he paid $1,989.00, and he made payments on June 18, 1984 and July 19, 1984, thus paying for the entire period retroactively to December 20, 1983 the date the initial premium was considered due. Thus MONY received adequate consideration for the contract in dispute.
 
 VI.
 
 35
 Given our holding that the policy took effect upon delivery, we need not reach the issue of whether Kleckner's payment amounted to a misrepresentation under which coverage could be denied since events subsequent to the effective date could not invalidate the contract of insurance. Given the protections which New Jersey insurance law provides to insureds, the public policy of New Jersey would not permit such a result. Accordingly, we will affirm the judgment of the district court.
 
 
 36
 SLOVITER, Circuit Judge, dissenting.
 
 
 37
 Our role sitting in diversity in this case is to predict whether New Jersey, which has never decided a case under facts similar to those before us, would uphold recovery on a $525,000 insurance policy selected by the insured after he learned he had terminal cancer. Although the majority relies on standard insurance and contract principles to uphold the beneficiary's right to recover, I believe that the undisputed facts in this case require a different result.
 
 
 38
 The linchpin of the majority's result is its conclusion that the policy was effective upon delivery. The majority relies upon the policy provision that "the policy will take effect on the date it is delivered." Concededly, the $525,000 policy was one of two policies already delivered to Kleckner before he learned he had terminal cancer, and, therefore, at the time of its delivery, Kleckner's representation on his application that he did not suffer from cancer was truthful.
 
 
 39
 We need not decide whether, if only one policy had been delivered, New Jersey would nonetheless preclude recovery because the application provides that payment of the first premium after signing the application "will mean I represent that such statements and answers would be the same if made at the time of such payment." App. at 76. At the time Kleckner made the premium payment, he knew he had cancer, and, in fact, had already undergone surgery for the removal of his cancerous kidney. We can pretermit consideration of this knotty problem because I believe the majority erred in considering the policy as effective upon its delivery.
 
 
 40
 In this case we do not have the somewhat usual situation of delivery of a policy to a prospective insured so that he may review its terms. That "free look" period, which under the policy was limited to ten days, App. at 31, is not at issue here. The parties agree that Kleckner held both the $300,000 and the $525,000 policy for more than ten days. In fact, the policies were delivered in late January 1984 and Kleckner didn't advise the company, through its agent, of his decision to select the $525,000 policy until May 11, 1984, after his hospitalization and considerably more than ten days after delivery.
 
 
 41
 The undisputed fact that I find controlling and to which I believe the majority gives inadequate consideration is that in this case Kleckner requested not one policy but alternate policies in differing amounts. Kleckner's application for the $525,000 policy states "please issue alternate policy same plan 300,000 amount with finance papers from Key Resources." App. at 79. The uncontroverted affidavit of MONY's agent states that:
 
 
 42
 3. On November 23, 1983 Klecker submitted a dual application for two life insurance policies with Mutual Life, one in the amount of $300,000 and the other in the amount of $525,000. This application was submitted in the alternative because Kleckner had not decided how much insurance he could afford after his retirement. Kleckner stated to me that his decision as to which policy to select could only be made after his entire post retirement financial plan was in place.
 
 
 43
 App. at 57.
 
 Further, the agent's affidavit states:
 
 44
 7. After the January, 1984 meeting in which I gave the two life insurance policies to Kleckner, I contacted Kleckner on several other occasions in an attempt to ascertain whether Kleckner desired to purchase either policy. On each of these meetings, I explained to Kleckner that it was important that he come to a decision on the life insurance question before he completed the other aspect of his post-retirement financial plan, but he continued to be resistant to making any decisions as he remained uncertain as to whether he could afford either policy.
 
 
 45
 App. at 58-59 (emphasis added).
 
 
 46
 I believe that the majority overlooks the significance of the request for and delivery of alternate policies. Even Kleckner's beneficiary does not argue that Kleckner was free to select both policies. Therefore, even if in the ordinary case we could treat the application for insurance as an offer, and delivery of the policy as an acceptance, the uncontradicted facts of record here preclude treating the delivery of alternate policies as an acceptance of Kleckner's offer. Instead, the insurance company's delivery of alternate policies from which Kleckner could select one, or indeed none, must be viewed as the offer. Kleckner accepted the offer when he forwarded the premium and finance papers to the agent on May 11, 1984 and selected the $525,000 policy. Indeed, Kleckner so viewed the arrangement, since his cover letter on May 11, 1984 returning the $300,000 policy and enclosing the premium for the $525,000 policy stated: "[Y]ou are going to use this to put the MONY $500,000 [sic] life policy into effect." App. at 61 (emphasis added).
 
 
 47
 I believe the majority would agree that if the policy was not effective upon delivery to Kleckner in January 1984, there could be no recovery. By the time Kleckner sent the premium, which I believe constitutes the intended acceptance of MONY's offer, he was fully aware of his cancerous condition, thereby breaching the representation provision of the application and violating his common law duty to disclose material changes in his health subsequent to his application. See Weir v. City Title Insurance Co., 125 N.J.Super. 23, 308 A.2d 357 (App.Div.1973). Because I view the facts and applicable principles differently than does the majority, I would reverse the district court's grant of summary judgment.
 
 
 
 *
 Honorable Anthony J. Scirica of the United States District Court for the Eastern District of Pennsylvania, sitting by designation