SPRINGFIELD FIRE & MARINE INS. CO
v. HUBBS–JOHNSON MOTOR CO.
No. 1312—5816.

Commission of Appeals of Texas, Section B.
Oct. 14, 1931.

W. B. Silliman, of Ft. Stockton, and Thompson, Knight, Baker & Harris and Pinkney Grissom, all of Dallas, for plaintiff in error.

W. C. Jackson and R. D. Blaydes, both of Ft. Stockton, for defendants in error.

LEDDY, J.

Defendants in error, Jack Hubbs and C. S. Johnson, were co-partners doing business under the firm name of the Hubbs-Johnson Motor Company. On November 26, 1926, plaintiff in error, through its agent, Mrs. Ferguson, who resided at Ft. Stockton, Tex., issued to defendants in error a fire insurance policy No. 186, covering $1,000 on the contents of a building situated upon lot 13, block 34, in the town of McCamey, and $500 upon the building. There was additional insurance in three other companies in the same amount issued through the same agent. Shortly after policy No. 186 was written, defendants in error began the erection of a new building on lot No. 12, block 43, in the town of McCamey.

It is claimed by defendants in error that they informed Mrs. Ferguson they desired and would expect a transfer of the insurance from the old location to the new location and to have an increase in the amount of insurance by reason of the increase in the cost of the building and the automobile accessories and parts carried by them at the new location; that they wanted an additional $1,500 of insurance on the building and $3,000 additional on the stock of merchandise.

It is also claimed that Mrs. Ferguson, agent for plaintiff in error, and for a number of other insurance companies, agreed that she would immediately cover said additional amount of insurance and make necessary change in existing policy as to change of location.

On December 15, 1926, defendants in error moved from their old location to the new, and informed plaintiff in error's said agent of such removal.

On May 3, 1927, the building and contents at the new location were totally destroyed by fire. It is claimed that plaintiff in error denied liability under the policy and declined to receive proofs of loss.

This suit was brought by defendants in error against plaintiff in error, upon the contract made with the agent, to recover $1,500, the amount of policy No. 186, it being alleged that Mrs. Ferguson, plaintiff in error's agent, agreed that no lapse of insurance would occur on account of the removal to the new location, that insurance would follow such merchandise, and that it would remain in full force and effect on the new building and its contents.

Among other defenses, plaintiff in error set up that the only contract it ever had with Hubbs and Johnson respecting their property at McCamey was policy No. 186 covering the property located on lot 13, block 31, that said contract was canceled with the consent of defendant in error, and that no new contract was made with plaintiff in error to insure the building and its contents at the new location.

The case was submitted to a jury upon special issues, in response to which the following findings were made: (1) That the agent, Mrs. Ferguson, did not agree to transfer the insurance sued upon from the old to the new location; (2) that the agent, Mrs. Ferguson, did agree to rewrite the insurance on the property at the new location in the defendant company; (3) that the policy of insurance sued on was canceled with the consent of the plaintiff; (4) that the policy of insurance was canceled, with the agreement that the same would be rewritten on the property in the new location of the company; (5) that the record warranty clause was substantially complied with by the defendant in error.

Based upon these findings, the trial court rendered a judgment in favor of defendants in error against plaintiff in error for the amount of policy No. 186 with legal interest thereon. Plaintiff in error duly perfected its appeal to the Court of Civil Appeals, where the judgment of the trial court was affirmed.

Plaintiff in error insists in this court that there is no evidence to sustain the findings of the jury that the agent, Mrs. Ferguson, agreed to rewrite the insurance on the property in defendant company at the new location or that the policy of insurance was canceled with the agreement that it would be rewritten on the property at the new location.

The sufficiency of the evidence to support the findings of the jury that policy No. 186 for $1,500 was canceled with the consent of defendants in error, and that Mrs. Ferguson, plaintiff in error's agent, did not agree to transfer this policy of insurance from the old to the new location, is not in any way challenged.

■ It is the settled law that parol contracts to effect insurance by issuance of a policy are valid and enforceable. Cooley's Briefs on Insurance, vol. I, p. 497, and authorities there cited; Cohen v. Continental Fire Insurance Co., 67 Tex. 325, 3 S. W. 296,

60 Am. Rep. 24; Ginners' Mutual Underwriters' Association v. Fisher (Tex. Civ. App.) 222 S. W. 285.

But it is equally well settled that an executory contract for insurance is not enforceable, unless all of the elements essential to a contract of insurance have been agreed upon by and between the insurer and the insured. The contract must be in such condition that nothing is left open for future negotiations with reference to the subject-matter, parties, rate of premium, amount, or duration of risk. Corpus Juris, vol. 32, p. 1105, and authorities there cited.

It is a recognized principle of the law of contracts that the minds of the parties must meet upon the substantial terms of the contract before it can be enforced. This principle applies with equal force to an insurance contract. New York Life Insurance Co. v. Levy, 122 Ky. 457, 92 S. W. 325, 5 L. R. A. (N. S.) 739; Corpus Juris, vol. 32, p. 1105, § 19.

Where a party applies for insurance, and there is an acceptance upon terms variant from those offered, it results in a rejection of the offer, but operates as a counter offer, which, in order to render the insurance effective, must be accepted by the insured. Ætna Ind. Co. v. Crowe Coal Co., 154 F. 545, 83 C. C. A. 431; Costello v. Grant County Mut. Fire Ins. Co., 133 Wis. 361, 113 N. W. 639.

When tested by these well-settled rules of law, it affirmatively appears from this record that the minds of the parties never met upon a contract of insurance which would justify a recovery in favor of defendants in error for the amount of policy No. 186. We think this fact becomes apparent from a consideration of the material evidence offered upon this point. Mr. Hubbs, one of the defendants in error, testified:

"I always looked to her (meaning Mrs. Ferguson, the agent) for renewal of my insurance. When I gave her insurance I requested that she keep it covered. I depended upon her to watch these dates for me—I expected her to watch the date of expiration and to keep the property insured. I did not know how many companies she represented. It did not make any difference to me. She always made her own selection of the companies and she said that they were all standard companies, and it did not make any difference to me, just so I got the insurance—that was all I wanted. That was what took place when I first ordered $6,000.00 in coverage on that property at McCamey."

"I told Mrs. Ferguson that we were building the new building and expected to transfer the stock at the new location, and she said she wanted to take care of it and make the transfer, and I asked her to handle it so there would be no lapse in the coverage, and she assured me she would handle it in that way; she promised to keep it covered."

"My specific request at the time was that there should be no lapse in the coverage.

"What I wanted was $3,500.00 on the building and $7,000.00 on the stock, and I did not care how I got it, so it was in a good company. We made no request for any particular company and did not ask her what company she had. That did not enter into the conversation. The distribution was left up to her.

"I never thought anything about the insurance on the building and stock being in the same company. I never seen the policy and so far as the companies were concerned I never did discuss that with Mrs. Ferguson. * * * I do not know how many companies she had—I don't know whether she had eighteen or twenty-five.

"It didn't make any difference to me how she handled it. I was asking her to give me $3,500.00 on the building and $7,000.00 on the stock, and that was the extent of my interest, and it then passed out of my mind.

"I told her to handle it in her regular manner of handling, so there would be no lapse of coverage, and she assured me it would be handled in that way.

"She did tell me she might have to rewrite, but in the transaction there would be no lapse of coverage. She assured me there would be $7,000 on the stock and $3,500.00 on the building, or at least I took it that way and that we would have that increased over the old insurance and she agreed to it."

Mrs. Ferguson testified that Mr. Hubbs directed her to handle this insurance on the property in the new location according to her regular custom. She stated that in accordance with such custom she canceled the existing policy, and then undertook to get one of the companies represented by her to carry this risk, but that neither plaintiff in error nor any other company she represented would agree to carry the same, and that it was impossible for her to get any company to carry this oil field risk, that for this reason she never wrote any new policy, and that no insurance was carried on the building and contents at the new location so far as she knew.

When the unchallenged findings of the jury are considered in connection with the undisputed evidence, we can find no justification for a recovery against plaintiff in error upon the theory that a valid contract of insurance was made between defendants in error and plaintiff in error for $1,500, the amount of policy No. 186.

In the first place, the jury found that policy No. 186 for $1,500 was canceled with the consent of defendants in error. This being true, no recovery could be had upon such pol-

icy. It therefore devolved upon defendants in error to establish the proposition that a new contract was made with plaintiff in error by the terms of which it agreed to insure the building and contents in the new location for the same amount as the original policy. There is no pretense that they made any agreement with plaintiff in error to write $1,500 insurance on the property at the new location. On the contrary, it is undisputed that their proposal to Mrs. Ferguson was for a different and increased amount of insurance on the building and contents in the new location over that covering the building and contents at the old location. It is clear that, if any contract of insurance resulted from the agreement between defendants in error and plaintiff in error's agent, it was one for the different amount requested, and not one for $1,500.

If, under the application made by defendants in error, the plaintiff in error had actually issued a policy of insurance for the exact amount against the property on the old location, it would not have been binding upon defendants in error unless such reduced amount had been accepted by them. The act of the insurance company in refusing to issue a policy in the amount requested would have constituted a rejection of the amount applied for, and resulted in the making of a counter offer to insure for a lesser sum. Under such circumstances, no contract would have resulted until the lesser amount was accepted by defendants in error. New York Life Insurance Co. v. Levy, 122 Ky. 457, 92 S. W. 325, 5 L. R. A. (N. S.) 739. As said by the Supreme Court of the United States in the First National Bank v. Hall, 101 U. S. 43, 50, 25 L. Ed. 822, "A proposal to accept, or acceptance upon terms varying from those offered, is a rejection of the offer."

The case made by the proof offered by defendants in error shows a proposal by them for insurance, not in the sum of $1,500, the amount of the original policy on the old location, but for the increased amount they desired written on the property at the new location. According to their theory, this was agreed to by the agent of the plaintiff in error. After such agreement was entered into, it is not shown that there was any further communication by defendants in error in regard to this contract of insurance. They never at any time agreed with the insurance company to accept any lesser amount, nor was any offer made by the insurance company rejecting the amount applied for and proposing to issue a policy for a lesser sum. Therefore under no view of the evidence can it be said that the minds of the parties ever met upon a contract for insurance at the new location in the sum of $1,500.

It follows we must hold there is no evidence in the record to sustain the material finding of the jury that an agreement was made between defendants in error and plaintiff in error's agent to rewrite the insurance on the new location in the same amount as existed on the old.

■■ There is an additional reason why no valid contract of insurance was shown by defendants in error. According to an unchallenged finding of the jury, the policy issued by plaintiff in error covering the building and contents at the old location was canceled. Defendants in error's right to recover must therefore be predicated upon a new contract for insurance. No such contract was shown to have been consummated, because it does not appear that plaintiff in error was ever designated by its agent or by defendants in error as the company which would carry any part of the insurance upon the property at the new location. Diamond v. Duncan, 107 Tex. 256, 172 S. W. 1100, 177 S. W. 955; Grimes v. Virginia Fire Ins. Co. (Tex. Civ. App.) 218 S. W. 810.

Mrs. Ferguson represented a large number of fire insurance companies. The defendants in error frankly admit that they did not know which of the companies she represented carried the risk on their property at the old location, and they further concede that they did not even mention what company they desired the new insurance should be placed with. In this connection Mr. Hubbs testified: "We made no request for any particular company, and did not ask her what companies she had—that did not enter into the conversation. The distribution was left up to her. I never thought anything about the building and stock being in the same company. I had never seen the policy and, so far as the companies were concerned, I never did discuss that with Mrs. Ferguson."

Defendants in error do not controvert the rule that, where an agent represents a number of insurance companies, a parol contract with such agent for insurance is not effective, unless the particular company in which the insurance is to be written is specified by the assured, or unless the agent has designated a particular company to carry the risk prior to the time a loss occurs. They insist, however, that the doctrine announced in United States Fire Insurance Co. v. Fife (Tex. Civ. App.) 6 S.W.(2d) 211, applies to the contract shown by the evidence in this case. In the case relied upon, it was merely held that, in the absence of an agreement to the contrary, the presumption is that a renewal of an existing policy is by the same company and upon the same terms and conditions as provided in the original policy. Such principle can have no application to the facts shown by this record. Here the jury expressly found that the existing policy was canceled by agreement of the parties. There was, therefore, no agreement for renewal of an existing policy under which it might be fairly im-

plied that it was to be written by the company issuing the original policy. There is merely an effort to show a new contract for insurance without any designation, either by the agent or the assured, of the company by which the risk was to be assumed.

Defendants in error insist the finding of the jury that an agreement was made to rewrite the insurance on the property at the new location is equivalent to a finding of an agreement for renewal of the existing policy. Where a policy has been issued covering a certain building, an agreement to write a policy against another building for a different amount is in no sense a renewal of the old policy, and this is true, even though the parties may so designate it. "The very request to renew a policy," says the court, in Orient Ins. Co. v. Wingfield, 49 Tex. Civ. App. 202, 108 S. W. 788, 792,. "implies that the new policy shall be exactly like and similar to the old policy." The terms of the contract relied upon to show a renewal of the existing policy disclose provisions materially differing from those of the existing policy, in that the new contract showed an agreement for insurance upon a different risk and in a larger amount than the old policy. A contract to write such a policy cannot, by any sound process of reasoning, be held to constitute an agreement for the renewal of the existing policy.

We therefore recommend that the judgment of the trial court and the Court of Civil Appeals be reversed, and that judgment be here rendered for plaintiff in error.

### CURETON, C. J.

Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered for the plaintiff in error, as recommended by the Commission of Appeals.