EMILY KLOS, PLAINTIFF-APPELLANT, v. MOBIL OIL COMPANY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued October 21, 1969—Decided December 15, 1969.

*Mr. Nathan C. Staller* argued the cause for plaintiff-appellant (*Messrs. Staller, Hayman & Gorelick,* attorneys).

*Mr. Leonard C. Horn* argued the cause for defendant-respondent, American Home Assurance Company (*Messrs. Horn and Weinstein,* attorneys).

*Mr. Herbert Ziff* argued the cause for defendant-respondent, Mobil Oil Company (*Messrs. Ziff & Yacavino,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. Plaintiff seeks to recover for the death of her husband under an accident insurance contract obtained from defendant American Home Assurance Company (American) and solicited by American through defendant Mobil Oil Company's mailing and billing facilities. On cross motions for summary judgments by the parties, the trial court granted judgments in favor of both defendants on the ground that the policy was not yet effective on the date of the decedent's alleged accident.[1] The Appellate Division affirmed

---

[1] The trial court further held that, regardless of whether plaintiff's decedent was insured at the time of the alleged accident, defendant Mobil Oil Company was not liable because it was merely a conduit for American's operations. We need not reach the issue of Mobil's liability since the plaintiff neither briefed nor argued it before us, and we deem it abandoned.

in an unreported opinion and we granted plaintiff's petition for certification. 54 *N. J.* 168 (1969).

The facts material to this appeal are not in dispute. Plaintiff's husband, Stanley Klos, 82 years of age, was the holder of a Mobil Oil Company credit card. The billing date for charges accruing under the credit card was the 17th of each month. With his September 1964 billing, Klos received a letter, a brochure, and an application form soliciting him, as a Mobil credit cardholder, to purchase an accident insurance policy from American. The application provided for four available coverages with appropriate blocks in which an applicant could place a check mark next to the desired coverage.[2] Klos selected Plan Two which provided, in pertinent part, that the cardholder would be billed $9.00 quarterly and that his beneficiary would receive $25,000 if he met with an accidental death. Klos completed and signed the application form and mailed it on or about October 8, 1964, in a postage prepaid envelope provided by American for that purpose. The application was received by American on October 16. On October 20, a policy was mailed to Klos which he received on October 22. On November 4, 1964, Klos died, allegedly of injuries he suffered as a result of a fall in his home on October 25, three days after he had received the policy.

The issue raised by this case is the effective date of the policy coverage. There are a number of possibilities

---

[2] The plans appeared in the application as follows:

"CHECK

| COVERAGE DESIRED | AVAILABLE COVERAGES | QUARTERLY PREMIUM |
|---|---|---|
| ☐ | Insured Only $25,000 | $ 4.00 |
| ☐ | Insured $25,000 Spouse $12,500 | $ 9.00 |
| ☐ | Insured $25,000 All children of insured 3 mos to 23 yrs. $1,000 each | $ 7.00 |
| ☐ | Insured $25,000 Spouse $12,500 All children 3 mos. to 23 yrs. $1,000 each | $10.00" |

The same plans appeared in the brochure which accompanied the application.

suggested in the various pieces of literature and documents which American issued. The letter accompanying the brochure and the application form did not contain any date of coverage, but the brochure provided that the accident policy "will become effective 7 days prior to your next Mobil billing date following receipt of your application." The brochure also stated that the insured would be given a "10-day right to study policy * * * to be sure the coverage meets your expectations. If you are not satisfied, return it and there will be no charge to you and no obligation on your part." The application form which Klos signed on October 8 contained the following printed statement immediately above his signature: "I understand that coverage is not effective until policy is issued." Finally, on October 20 the insurance company mailed out the policy to Klos in an envelope on which was printed, "Important — Your Insurance Policy is Enclosed!" The policy contained the same ten-day examination period that appeared in the brochure. On the first page under the caption "Coverage Schedule" the "Effective Date" for coverage was specified as November 10, 1964.

On the motions for summary judgment, the plaintiff first contended that the policy was effective as of October 10 in accordance with the language of the brochure. She reasoned that the decedent was covered seven days prior to the billing date following American's receipt of the application. Since American received the application on October 16, a day before the next billing date, she argued that the decedent was covered on October 10. In the alternative, she argued that, in accordance with the language of the application, the policy was at least effective as of the date of its issuance on October 20.

The trial court rejected both contentions. It reasoned that the October 10 date could not govern since the clause in the brochure is ambiguous and must be subordinated to the language of the application, particularly since the plaintiff conceded in her affidavit that her husband did not rely on

the brochure's clause. The court also rejected the October 20 date and concluded that the specific date of November 10 in the policy should govern. Since the decedent's alleged accident occurred before November 10, the court held that there could be no recovery. The Appellate Division affirmed, substantially for the reasons expressed by the trial court. We disagree with these conclusions and accordingly reverse.

At the outset we note that the techniques used in marketing the insurance we are dealing with here are quite different from the traditional methods and have become widespread through the growing use of credit cards. Companies which issue credit cards, such as Mobil Oil Company, frequently mail out literature soliciting cardholders to purchase various commodities to be billed through their credit facilities. In the present case, the literature, which included a letter, a brochure, and an application, solicited Mobil's cardholders to purchase accident insurance from American. The brochure and the letter provided for "easy payments" to be billed through the cardholder's Mobil account. The letter says that the brochure "fully describes the plan." The brochure reads:

"YOUR COVERAGE IS ALL-RISK . . .
There are no restrictions on occupation, age or travel. THERE ARE ONLY TWO POLICY EXCLUSIONS — SUICIDE AND WAR."
"EASY APPLICATION . . .
No physical examinations . . . no health or credit questions. Choose the plan that meets your needs . . . *Fill in the enclosed application form . . . Date and sign it . . . Mail it in the postage-paid envelope TODAY!*"

The customer is urged to act quickly. He is warned in the brochure that "[e]very 6 minutes someone meets with accidental death" and he is told that there will be "[n]o red tape." There are no further steps required of the cardholder after he has mailed in the completed application. The letter says that the defendant insurer "takes pride in *offering* you" its policy, and the brochure commences with the phrase "Now *offered* to you" (emphasis added).

■ It is true, as American contends, that generally an application for insurance constitutes an offer to the insurer which it may accept or reject. *Northhampton Mutual Livestock Ins. Co. v. Tuttle*, 40 *N. J. Law* 476, 479 (*Sup. Ct.* 1878); *Prudential Ins. Co. v. Milonas*, 118 *N. J. Eq.* 343, 346 (*Ch.* 1935); 1 *Couch, Insurance 2d* § 7:8 (1959). This rule affords an insurer an opportunity to determine whether an applicant is a desirable risk. But we do not believe the rule is applicable to the present case.

■ The accident insurance here is available to Mobil credit cardholders irrespective of their age or health. There is no requirement of a physical examination presumably because the policy is limited to death or certain injuries resulting from an accident. Nor are there credit rating questions to be examined by the insurer. Apparently, American is willing to rely on the credit screening techniques employed by Mobil Oil prior to issuing credit cards to its customers. Moreover, the scope of coverage is fully spelled out in the literature accompanying the application. Nothing is left open for future negotiations with reference to the subject matter, parties, rate of premium, amount, or duration of risk. In short, there is nothing for a cardholder or American to do after the application is made other than the latter's purely mechanical operation of processing the matter. In these circumstances we believe that the sending of the letter, brochure, and application form constituted an offer by American which could be accepted by Klos.

■ When Klos mailed in his completed application, he accepted American's offer and a contract for insurance was consummated with all of the essential elements agreed upon. See *Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson Motor Co.*, 42 *S. W. 2d* 248 (Tex. Com. App. 1931). To hold otherwise would be to allow an insurance company to postpone the date of the coverage it had promised even though it had nothing more to do than merely process the completed application. *Kentucky Central Life & Accident Ins. Co. v. Pemberton*, 212 *Ky.* 510, 514–516, 279 *S. W.* 968, 970

(1926); 1 *Appleman, Insurance* § 138 (1965). See *McElroy v. British America Assur. Co.*, 94 *F.* 990 (9th Cir. 1899). Once the contract for insurance was consummated, American was obligated to issue the policy it had promised. As was said in *Republic Insurance Co., Dallas, Texas v. French*, 180 *F. 2d* 796 (10th Cir. 1950) at 798. "* * * where * * * the parties agree in writing upon specific terms of the coverage, the Company cannot avoid liability by issuing a policy which does not cover the risk contemplated * * *. It cannot promise one contract and fulfill it with another." See *Livingston v. American Title and Insurance Co.*, 133 *So. 2d* 483, 486 (Fla. D. Ct. App. 1961). Therefore, we conclude that if the date of coverage in the policy varies from the date which the parties agreed upon in their contract for insurance, the date in the policy is not binding on the plaintiff. *Schwartz v. Northern Life Ins. Co.*, 25 *F. 2d* 555, 557–558 (4th Cir. 1928), *cert* denied 278 *U. S.* 628, 49 S. Ct. 29, 73 L. Ed. 547 (1928).

■ American attempts to avoid this conclusion by contending that their solicitation could not constitute an offer because the application form gave the cardholder a choice of coverage. We do not agree. The literature and application form listed four plans of coverage; each of these plans constituted a separate offer to the cardholder which he was free to accept or reject.

It is not enough, however, to conclude that the parties had entered into a contract for insurance. We must still determine whether the date of coverage in the contract differs from that in the policy. As we have said, there are a number of possibilities suggested in the brochure, the application and the policy. The policy specified the effective coverage date as November 10, 1964, subsequent to decedent's alleged accident on October 25. On the other hand, the brochure would seem to suggest that the coverage was effective as of October 10, 1964, prior to the alleged accident. The brochure stated that coverage would become effective seven days prior to the Mobil billing date following receipt of his application.

Since the application was received on October 16 and the next billing date was October 17, the brochure, taken alone, would afford coverage as of October 10.

American argues that the brochure cannot be taken alone but must be construed in conjunction with the provision in the application which informed the decedent that coverage would not be effective until the policy issued. It reasons that coverage could not be effective on October 10, since the policy had not yet issued. The next billing date which would permit a full seven day period to elapse after issuance of the policy would be November 17. Therefore, coverage would become effective November 10, the date specified in the policy. We do not believe that the provisions of the brochure and the application can be construed together to arrive at the same date. They are in conflict. The brochure does not refer to the next billing date following *issuance* of the policy; it refers to the billing date following *receipt* of the application. As we have said, taken alone, the brochure suggests an effective coverage date of October 10. At most, this seven day clause is ambiguous and, under well settled principles, should be construed in favor of the insured. *E. g., Bowler v. Fidelity & Casualty Co. of N. Y.,* 53 *N. J.* 313, 326–327 (1969). Nevertheless, it is unnecessary to rest our decision on this point. The application form which Klos signed informed him that coverage would not be effective until the policy issued. Since the alleged accident occurred after the policy was issued, the conflict of coverage dates between the brochure and the application does not affect the result in this case. Under either of these dates plaintiff would be entitled to recover if her husband's death was accidental.

American contends that the application form did not guarantee coverage *when* the policy was issued, but only cautioned the applicant that he would not be covered *before* the policy was issued. It cites *Alcamo v. Motorists Casualty Ins. Co.,* 11 *N. J. Misc.* 350 (*Sup. Ct.* 1933). The reliance is misplaced. There is no language in that case which lends support to such a proposition. Indeed, in *Alcamo* the cover-

age date in the policy and the date of issuance were the same. The policy did not bear a date subsequent to issuance as defendant suggests. Furthermore, although the application form in the present case stated that there would be no coverage "until" the policy issued, we believe that the average layman who reads that phrase reasonably expects he will be covered when he receives his policy. That expectation is particularly well founded where, as here, the literature which was issued by American stressed the urgency of procuring coverage as soon as possible. The whole tone of its solicitation was one of speed. It promised that there would be "[n]o red tape." Moreover, as we have said, neither the applicant nor the insurer had anything more to do, particularly after the policy was issued. In such circumstances, an applicant who actually had the policy in his possession surely would be mystified to learn that for no apparent reason he was not covered until some future date. As we have continually emphasized, members of the public who purchase insurance policies are entitled to the full measures of protection necessary to meet their reasonable expectations. *Allen v. Metropolitan Life Ins. Co.,* 44 *N. J.* 294, 305–306 (1965); *Linden Motor Freight Co., Inc. v. Travelers Ins. Co.,* 40 *N. J.* 511, 524–525 (1963); *Kievit v. Loyal Protective Life Ins. Co.,* 34 *N. J.* 475, 482 (1961). While the above cases dealt with construction of language in the policy itself, their rationale is equally applicable to contracts for insurance.

Our conclusion that Klos was covered on the date of the alleged accident is further supported by statements contained in both the brochure and the policy that the applicant had ten days to examine the policy without obligation. The trial court concluded that this provision was employed to protect the insurer rather than the insured. It reasoned that American had included the clause to avoid the implications of *Kievit v. Loyal Protective Life Ins. Co., supra,* that all constructional difficulties in the policy should be resolved in accordance with the reasonable expectations of the insured. By affording the insured an inspection period, American

hoped that the latter would make his objections known at that time. This assumption is not founded in sound reason. There is no authority for the proposition that an inspection period lessens the obligation of an insurance carrier to provide its customers with unambiguous policies. But even if it were assumed that an inspection period could aid in resolving constructional problems, it cannot be argued that the provision which itself grants the right of inspection need not be clear. In the present case, Klos was told that he was entitled to inspect the policy for ten days without charge or obligation. Certainly a person receiving this advice would reasonably consider himself covered for the ten day inspection period, and here, plaintiff has alleged that her husband died as the result of an accident incurred within that period.

Finally, the ten day inspection period refutes defendant's argument that Klos was obligated to read the policy and report any deficiencies. There is, of course, no way of knowing for certain whether Klos read his policy after receiving it. Plaintiff's affidavit implies that he did not read it. We think it is immaterial. We need not decide whether Klos would have been obligated to read the policy at some later date for it is clear that, at the least, he was entitled to a full ten day period in which to do so. That he had his alleged accident during this period does not detract from this right which American expressly gave to him. *Cf. McElroy v. British America Assur Co., supra.*

For the reasons expressed above, we hold that the accident insurance policy issued to the decedent was effective on the date of his alleged accident. Of course, plaintiff must still prove that her husband had an accident on the date alleged and that he died as a result of this accident.

Reversed and remanded.

*For reversal and remandment* — Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN—7.

*For affirmance* — NONE.