Heidi **GRIFFIN, Plaintiff–Appellee and Cross–Appellant,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant–Appellant and Cross–Appellee.**

**No. 03CA0537.**

Colorado Court of Appeals,
Div. IV.

Aug. 12, 2004.

Certiorari Granted Jan. 18, 2005.

Certiorar Dismissed March 4, 2005.

**284**

Law Office of Kevin C. Flesch LLC, Kevin C. Flesch, Englewood, Colorado, for Plaintiff–Appellee and Cross–Appellant.

Wells, Anderson & Race LLC, Sheryl L. Anderson, L. Michael Brooks, Jr., Jennifer L. Stotter, Denver, Colorado, for Defendant–Appellant and Cross–Appellee.

Opinion by Judge ROY.

In this insurance coverage case, State Farm Fire & Casualty Company (insurer) appeals the trial court judgment in favor of Heidi Griffin (customer). Customer cross-appeals the trial court's measure of damages awarded. We reverse and remand with directions to enter judgment for insurer.

Insurer contends that the trial court erred in concluding that insurer's delivery to customer of a partially completed application for insurance was an offer of insurance rather than an invitation for an offer. We agree.

In October 2001, customer contacted her State Farm insurance agent (agency) concerning renter's insurance. She had several telephone conversations with the agent and agency employees in which coverages, liability limits, and estimated premiums were discussed. Several appointments were scheduled to complete the application process, but customer canceled them all. The agent then agreed to mail the application to her.

In early December 2001, customer received a "Renters Application" (the application) with a self-addressed return envelope enclosed. It is undisputed that several blanks on the application had been completed by the agency based on information from the telephone conversations. According to the testimony and the carbon copy retained by the agency and admitted into evidence, these completed blanks included customer's name, address, and Social Security number; apartment rating information; general liability, medical payments, and personal property coverage limits; deductible amounts; loss settlement options; and an estimated premium. The underwriting section, the approximate value of certain classifications of personal property, and the agent's stamp were blank.

Above the applicant signature line, there was a statement with two boxes to be checked for alternative provisions: "I understand that coverage is: [1] provided by this application [or 2] not provided until this application is approved by State Farm's Underwriting Department." Neither box was checked. Also, above the signature line the form stated: "I am applying for insurance indicated and the information on this application is correct. The coverages, options, and endorsements of this policy have been explained to me. I understand that the premium charged for this policy must comply with [insurer's] rules and rates and may be revised."

According to the testimony, "sticky notes" were attached to the application indicating portions customer needed to complete, portions already completed that customer was authorized to change or correct, and places that required customer's signature.

According to customer, between December 8 and 12, 2001, she reviewed the application, made no changes, did not fill in the personal property value section as directed, signed the application, and issued a check for the estimated monthly premium. She then took the envelope to work, dropped it into the outgoing mail basket in her employer's mailroom, and either gave the mailroom attendant money for postage or left the money on the counter.

On December 18, 2001, a fire destroyed the entire contents of customer's apartment.

Customer contacted insurer that day to report the fire and to make a claim on her renter's insurance policy. Insurer informed her that it had not yet received her application and would wait a few weeks to see if it arrived. In the meantime, customer filed a claim, which insurer began processing. Insurer, however, never received the application and informed customer that it would not cover her losses. The premium check issued by customer never cleared her bank account.

In May 2002, customer commenced these proceedings against insurer, seeking, as pertinent here, a declaratory judgment that an enforceable insurance contract existed between the parties commencing with the mailing of the application and asserting a claim for breach of contract. After a trial to the court, the court concluded that the application was an offer to issue insurance which was accepted by customer's signing the application. It further concluded that there was a sufficient meeting of the minds, as there was a willingness to enter into a bargain, both parties thought they were entering into a bargain when insurer sent the application to customer, and all the material terms of the contract were agreed upon. It also concluded that customer thought she had coverage when she mailed the application and that the mailbox or deposit rule stated in *Werne v. Brown,* 955 P.2d 1053 (Colo.App.1998), controlled. The trial court awarded customer damages based on one-half of the replacement costs she incurred, approximately $15,000.

■ The interpretation of written documents presents a question of law subject to de novo review. *Collins v. Colo. Mountain Coll.,* 56 P.3d 1132 (Colo.App.2002).

■ No Colorado appellate court has determined whether delivery of an insurance application by an insurer to a prospective customer, whether blank or partially completed, constitutes an offer of insurance or an invitation for an offer of insurance. In other jurisdictions, the general rule is that an insurance application is not the insurer's offer of insurance, but rather is the insurer's proposal or invitation for an offer. The completed application then constitutes nothing more than an offer by the applicant to the insurer,

which the insurer may accept or reject after determining whether the applicant is a desirable risk. *See Inola Mach. & Fabricating Co. v. Farmers New World Life Ins. Co.,* 631 F.2d 712, 714 (10th Cir.1980)(under Oklahoma law, an application for insurance is not itself a contract, but is a mere proposal, which requires acceptance by the insurer); *Recupito v. Inter–Ocean Ins. Co.,* 362 F.Supp. 577, 580 (E.D.Pa.1973)(placing in the mail a completed insurance application with the first premium check does not create a contract of life insurance, but a proposal to contract), *aff'd,* 492 F.2d 1238 (3d Cir.1974); *Talbot v. Country Life Ins. Co.,* 8 Ill.App.3d 1062, 291 N.E.2d 830, 831 (1973)(an application for insurance, being a mere offer or proposal for a contract of insurance, is not a contract; the existence of a contract, absent a binder, depends upon the insurer's acceptance of the application); 3 Eric M. Holmes, *Holmes' Appleman on Insurance* § 11.1 (2d ed.1998)(generally, an application for insurance, "even with the contemporaneous payment of the initial premium[]" is "merely an offer or request for insurance which may be either accepted or rejected by the insurer"); 16 Richard A. Lord, *A Treatise on the Law of Contracts* § 49:38 (4th ed.2000)(an application for insurance "operates as an offer by the applicant to the insurer to purchase a policy"); 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 11:1 nn. 2–3 (3d ed.2003)(listing cases).

■ However, the general rule has a narrow exception. That is, if the insurer manifests an intent to insure upon the completion of the application, states that no review or underwriting is required upon receipt of an application, or states that issuance of a policy is otherwise guaranteed, then the application is an offer of insurance. *See Fleming v. Monumental Life Ins. Co.,* 154 F.3d 1001, 1004 (9th Cir.1998); *Fritz v. Old Am. Ins. Co.,* 354 F.Supp. 514 (S.D.Tex.1973); *Klos v. Mobil Oil Co.,* 55 N.J. 117, 123–24, 259 A.2d 889, 892 (1969); *Blumberg v. Paul Revere Life Ins. Co.,* 177 Misc.2d 680, 677 N.Y.S.2d 412, 414 (Sup.Ct.1998).

■ We conclude, as a matter of law, that the application here was not an offer of in-

surance, but merely an invitation for an offer of insurance. Even though the agency completed portions of the application based on information previously received from customer, insurer did not signify any intent to be bound to an insurance contract upon customer's execution of the application. The application clearly indicated that underwriting was anticipated, if not required, and called for the issuance of a binder and policy, neither of which was issued. When customer signed and returned the application and premium, the parties were still in the negotiating stage, pending the receipt of the completed application, completion of the underwriting process, acceptance by insurer, and issuance of a binder and policy.

In light of this disposition, we need not address the remaining issues on appeal or the cross-appeal. The judgment is reversed, and the matter is remanded to the trial court with directions to enter judgment for insurer.

Justice KIRSHBAUM * and Judge PIERCE * concur.

---

\* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

