**UNITED STATES FIRE INSURANCE COMPANY, Appellants,**

v.

**J. T. WESTERN, et ux., Appellees.**

**No. 18102.**

Court of Civil Appeals of Texas, Fort Worth.

July 12, 1979.

Rehearing Denied Sept. 13, 1979.

Harris & Harris and Jack E. Harris, Arlington, for appellant.

Henry Stollenwerck, Dallas, for appellees.

## OPINION

HUGHES, Justice.

United States Fire Insurance Company (USFICO), has appealed a judgment rendered after a jury verdict which gave J. T. Western and wife a recovery against it on a Texas standard fire insurance policy.

We reverse and render.

The Westerns alleged that Dan Gibson, acting as their insurance agent requested that the Bullett Abshire Agency, a local recording agent of USFICO, renew a fire insurance policy dated March 20, 1974. Abshire bound the coverage, delivering a policy of insurance dated March 20, 1975 to Mike Wright who had succeeded Gibson as agent for Westerns. The Westerns alleged Wright took the policy to them and demanded payment and was told by them they wanted the policy and would send the premium. Their building burned and they demanded from USFICO the $22,500.00 face value of the policy.

USFICO alleged that no policy was in force on April 23, 1975, when the building burned stating that the Westerns had rejected its offer to insure the building. There were other defenses pled, including *revocation of offer to insure by USFICO communicated directly to Westerns* as well as substantial change in the condition of the property (destruction by fire) known to Westerns before any acceptance occurred. None of USFICO's pleadings were sworn to.

Looking at the facts in the light most favorable to the judgment we note that Abshire issued a binder to renew the Western policy No. R525002 (issued 1974, expiring March 20, 1975). Later, policy No. R632785 was issued by Abshire and a bill for premium was issued requiring payment in thirty days. Such policy was intended as a renewal of No. R525002, and was sent to Wright for delivery.

Mrs. Western testified to Mr. Wright's coming to her door on April 21, 1975, with an insurance policy in his hand, asking for money. She also said she was told by Gibson that Wright would be taking over Gibson's business. She testified that after the fire she contacted Wright and he told her he had cancelled the policy. Mrs. Western, on cross-examination, said Wright may have told her that the insurance had run out and that he told her if she wanted insurance she was going to have to pay for it. She said she told Wright that she had not discussed it with her husband and they had no chance to talk about it. She said that this was their only conversation before the fire.

We are faced in this case with answers to special issues 7 and 8 which tell us the jury found that Mrs. Western told Wright in effect that she and her husband rejected the insurance policy in question. Further, the jury found that before the fire, Mrs. Western and her husband failed to accept the insurance policy in question.

There is no question that the expired 1974 policy, and the 1975 policy, here in litigation, have noticeable differences. The 1975 policy premium was $163.00. The 1974 policy premium was $275.00. The 1975 policy provides an 80% co-insurance clause not in the 1974 policy. The 1974 policy has endorsements numbers 250 and 29 which the 1975 policy lacks, while the 1975 policy has endorsement number 200 which the 1974 policy does not. Mrs. Western noted the difference in the premium, saying she

couldn't understand "because insurance doesn't go down". However, by her testimony, she was called by Wright, who told her "we are going to have to do something about the policy". She told him she would talk to her husband and would probably mail him a check "tomorrow", to which "He said, yes". Then she said, "you will get a check tomorrow".

Wright, who said he was requested by Abshire to contact the Westerns, said he went to see the Westerns to see if they wanted to pay the premium on the 1975 policy and if they wanted the insurance. He testified that Mrs. Western told him that she didn't believe they wanted it. She did tell him he could call back the next day. He reported calling the next day and having her tell him "that they had discussed it again and they would not want it". He told her that he had to send it back that day, to which she indicated that he (Mr. Western) might call Wright if Wright still wanted to talk to him. Wright said that Western "never did recall" and the policy was put in the mail in his office to go back to Abshire.

We hold that the jury had ample evidence on which to base its answers to special issues nos. 7 and 8. The jury had the option of believing Mrs. Western or Wright. They chose to believe Wright and we are not at liberty to change their answers.

■ Therefore, we, sustain point of error number 13 and hold that the 1975 policy submitted to Westerns was at such variance with the 1974 policy that it amounted to a counter offer. The jury findings in special issues 7 and 8 reflect a rejection of a counter offer. Restatement of Contracts § 38 (1932); 13 Tex.Jur.2d *Contracts* § 36 (1960); *Springfield Fire & Marine Ins. Co. v. Hubbs-Johnson M. Co.*, 42 S.W.2d 248 (Tex. Comm'n App.1931, no writ).

■ We sustain point of error number 14 holding that the parties cancelled the policy by mutual consent. The proof was sufficient to sustain the jury finding in special issues nos. 7 and 8 that the Westerns rejected the policy and also failed to accept it.

Coupled with the evidence of return of the policy to Abshire and its voiding the same, it is manifest that both parties wanted the policy cancelled—a mutual consent situation. *Argonaut Southwest Ins. Co. v. Amco Mesh & Wire Co.*, 472 S.W.2d 843 (Tex.Civ. App.—Dallas 1971, writ ref'd n.r.e.).

We have considered and overrule the other points of error, reverse the judgment of the trial court and render that J. T. Western and his wife take nothing.